# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 14, 2010

Lyle W. Cayce
Clerk

No. 07-60997

JOHN ASHLEY HALE,

Plaintiff-Appellant,

versus

RONALD KING,
Superintendent of Southern Mississippi Correctional Institution;
MARGARET BINGHAM,
Superintendent of Southern Mississippi Correctional Institution;
CHRISTOPHER EPPS,
Commissioner of Mississippi Department of Corrections;
MIKE HATTEN, Health Service Administrator
of Wexford for Southern Mississippi Correctional Institution;
JOHN DOE, Physician at Southern Mississippi Correctional Institution;
DOCTOR ZANDU, Psychiatrist at Central Mississippi Correctional Facility;
DOCTOR PATRICK ARNOLD, Physician for Correctional Medical Services
at Southern Mississippi Correctional Institution;
DOCTOR WILLIAMS, Psychiatrist of Correctional Medical Services
for Southern Mississippi Correctional Institution;
DOCTOR TRINCA,
Physician for Wexford at Southern Mississippi Correctional Institution;
MIRIAM MOULDS,
Kitchen Supervisor at Southern Mississippi Correctional Institution;
JOHN DOE 2, Chief Executive Officer of Correctional Medical Services
for Mississippi Department of Corrections;
JOHN DOE 3, Chief Executive Officer of Wexford at Southern Mississippi
Correctional Institution for Mississippi Department of Corrections;
DOCTOR MCCLEAVE; DOCTOR WOODALL;
WEXFORD HEALTH SERVICES,

Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Mississippi

Before JOLLY, SMITH, and OWEN, Circuit Judges.

PER CURIAM:

The district court held that the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12131-12165, does not validly abrogate state sovereign immunity with respect to the claims of disabled inmates who were denied access to prison educational and work programs. *Hale v. Mississippi*, No. 2:06-CV-245, 2007 WL 3357562 (S.D. Miss. Nov. 9, 2007). Because Congress's authorization of those claims is not "congruent and proportional" to the enforcement of the Equal Protection Clause, we affirm.

## I.

While a state prisoner, John Hale filed a *pro se* complaint *in forma pauperis* against prison officials in their official capacity, alleging violations of the ADA.[1] Specifically, he claims they discriminated against him in violation of title II of the ADA[2] because he suffers from Hepatitis C, post-traumatic stress disorder, chronic depression, intermittent explosive disorder, and antisocial personality disorder. Under prison regulations, those health problems required Hale to be classified as "medical class III," a designation limiting his work and pro-

---

[1] Hale also raised claims under 42 U.S.C. § 1983 asserting inadequate medical treatment and denial of proper diet. Those were dismissed, and Hale does not appeal as to them.

[2] Title II provides that "[s]ubject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

No. 07-60997

gram assignments, thus giving him fewer opportunities to earn "meritorious earned time." Hale maintains that because of his classification, the defendants prevented him from using the community work centers, accessing the satellite and regional prison facilities, working in the kitchen, and attending school.

The district court dismissed on the ground that the officials are entitled to state sovereign immunity. The court acknowledged that Congress can abrogate state sovereign immunity under § 5 of the Fourteenth Amendment and that it did so in the ADA. *See United States v. Georgia*, 546 U.S. 151 (2004). Nonetheless, the court reasoned that Congress's § 5 powers do not extend to creating causes of actions for ADA violations that are not "congruent and proportional" to violations of the Fourteenth Amendment. *See City of Boerne v. Flores*, 521 U.S. 507, 520 (1997).

After Hale filed his *pro se* brief on appeal, we appointed counsel to file a supplemental brief to address the question "whether Title II of the ADA validly abrogates Eleventh Amendment sovereign immunity for claims that violate Title II but are not actual violations of the Fourteenth Amendment." The United States intervened and submitted a brief supporting Hale's position.

II.

The district court acted under 28 U.S.C. § 1915(e)(2)(B)(ii), which allows it to dismiss an *in forma pauperis* complaint if it "fails to state a claim on which relief may be granted." We review such dismissals *de novo*. *Praylor v. Tex. Dep't of Criminal Justice*, 430 F.3d 1208, 1209 (5th Cir. 2005).

The ADA provides that "[a] State shall not be immune" from suits under the act because of sovereign immunity. 42 U.S.C. § 12202. Congress has the power to abrogate state sovereign immunity with such unequivocal statements, but only where it "act[s] pursuant to a valid grant of constitutional authority." *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) (alteration in orig-

inal) (citing *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73 (2000)). There is only one source of such authority: the enforcement provisions of § 5 of the Fourteenth Amendment. *Id.* at 364. "Accordingly, the ADA can apply to the States only to the extent that the statute is appropriate § 5 legislation." *Id.*

Nonetheless, "no one doubts that § 5 grants Congress the power to 'enforce . . . the provisions' of the Amendment by creating private remedies against the States for actual violations of those provisions." *Georgia*, 546 U.S. at 158 (alteration in original). Thus, the ADA validly abrogates sovereign immunity insofar as it "creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment." *Id.* at 159.

The parties agree that none of the defendants' alleged misconduct violates the Fourteenth Amendment. Where there is no such violation, there is a three-step process for determining whether Congress validly abrogated sovereign immunity with respect to that conduct. The court must determine,

> on a claim-by-claim basis, (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

*Id.*

## A.

The defendants and the United States contend that the district court failed to apply the first step of the *Georgia* test because it did not determine whether Hale had established a *prima facie* title II claim. Thus, they argue that we should remand to complete that inquiry.

Step one of *Georgia* does not require a *prima facie* showing of a title II claim. The purpose of step one, understood in context, is to ensure that the court

knows "precisely what conduct [the plaintiff] intend[s] to allege in support of his Title II claims." *Id.* Remand was necessary in *Georgia* because the *pro se* litigant had pleaded a number of "'frivolous claims'—some of which are quite far afield from actual constitutional violations . . ., or even from Title II violations." *Id.* Thus, it was not obvious which conduct the Court was supposed to evaluate as part of the sovereign immunity inquiry. By contrast, Hale's pleadings are pellucid, and the district court identified the precise conduct that he alleges violated the ADA.[3] Accordingly, "[w]e see little need for a remand when the issue before us is a purely legal one, namely, whether the ADA validly abrogated state sovereign immunity with respect to the claims of the type advanced by the plaintiff[]." *Klingler v. Dir., Dep't of Revenue, State of Mo.,* 455 F.3d 888 (8th Cir. 2006).

The United States contends that deciding the sovereign immunity question without ensuring that Hale has stated a proper ADA claim risks unnecessarily deciding a constitutional question.[4] That argument misunderstands the nature of sovereign immunity, which rests on the principle that "the Framers thought it an impermissible affront to a State's dignity to be required to answer the complaints of private parties in federal courts."[5] To limit the indignity a state may suffer and to vindicate its "right not to be haled into court," "a state has a right

---

[3] *Hale v. Mississippi*, 2007 WL 3357562, at \*2 ("In his Amended Complaint, plaintiff also alleges claims for violations of the ADA against defendants Mr. Epps, Mr. Hatten, and Mr. King. Plaintiff claims he was discriminated and retaliated against. Specifically, he claims that he was denied access to the satellite and regional facilities, was denied the ability to work in the prison kitchen, and was denied the ability to go to school, because he was classified as 'medical class III' and/or a 'psychiatric C.'").

[4] *See Spector Motor Serv., Inc. v. McLaughlin*, 323 U.S. 101, 105 (1944) ("If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality . . . unless such adjudication is unavoidable.").

[5] *Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 760 (2002); *accord P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144-46 (1993) (holding that sovereign immunity "is an immunity from suit rather than a mere defense to liability").

No. 07-60997

to an early determination of the issue."[6]  Consequently, courts often must rule on sovereign immunity even though further litigation might have resolved the suit on non-constitutional grounds.

### B.

We thus proceed to the third prong of the *Georgia* test to determine whether Congress's § 5 power supports its purported abrogation of sovereign immunity.  "Legislation which deters or remedies constitutional violations can fall within the sweep of Congress' enforcement power even if in the process it prohibits conduct which is not itself unconstitutional . . . ." *City of Boerne*, 521 U.S. at 518.

Congress's § 5 power, however, "is not unlimited."  *Id*.  To determine whether a particular application of the ADA falls within it, we must (1) "identify the constitutional right or rights that Congress sought to enforce when it enacted Title II"; (2) ascertain whether Congress enacted title II in response to a history and pattern of unconstitutional conduct; and (3) decide "whether the rights and remedies created by Title II are congruent and proportional to the constitutional rights it purports to enforce and the record of constitutional violations adduced by Congress." *Tennessee v. Lane*, 541 U.S. 509, 522-33 (2004) (describing *City of Boerne*'s application to title II).

Hale contends he was discriminated against when he was denied educational training and access to prison work programs because of his medical disability.  Therefore, his claims implicate title II's attempt to enforce the Equal Protection Clause's "prohibition on irrational disability discrimination." *Id*. at 522.[7]

---

[6] *Smith v. Reagan*, 841 F.2d 28, 31 (2d Cir. 1988); *accord Helton v. Clements*, 787 F.2d 1016, 1017 (5th Cir. 1986) ("[A] defendant's entitlement under immunity doctrine [is] to be free from suit and the burden of avoidable pretrial matters . . . .").

[7] There are "a variety of other basic constitutional guarantees" that title II attempts to enforce. *Lane*, 541 U.S. at 522-23. *Lane* particularly addressed the right implicated in that
(continued...)

No. 07-60997

Congress enacted title II partially in response to governmental units' discrimination against the disabled, including "a pattern of unequal treatment in the administration of a wide range of public services, programs, and activities, including the penal system." *Id.* at 525.

We may therefore move to step three of the *City of Boerne* test. When determining whether title II is an appropriate response to the history of unconstitutional treatment, we do not "examine the broad range of Title II's applications all at once," *id.* at 530, but instead focus on the particular application at issue, equal access to prison education and work programs, *see id.* That requirement is not "congruent and proportional" to Congress's goal of enforcing the Equal Protection Clause's prohibition on irrational disability discrimination. Under that clause, disabled individuals are not a suspect or quasi-suspect classification commanding heightened review of laws discriminating against them. *See Garrett*, 531 U.S. at 366 (citing *Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 446 (1985).

Consequently, disability discrimination is subject only to rational-basis review, under which there is no constitutional violation so long as "there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Id.* at 367 (citing *Heller v. Doe*, 509 U.S. 312, 320 (1993)). The state need not justify its own actions; rather, "the burden is upon the challenging party to negative any reasonably conceivable state of facts that could provide a rational basis for the classification." *Id.* (citation and internal quotation marks omitted).

---

[7] (...continued) case, the "right of access to the courts" protected by the Due Process Clause and the Confrontation Clause. *Id.* at 523; *see also id.* at 540 (Rehnquist, C.J., dissenting) ("[B]ecause the Court ultimately upholds Title II 'as it applies to the class of cases implicating the fundamental right of access to the courts,' the proper inquiry focuses on the scope of those due process rights." (citation omitted)). We therefore focus on the Equal Protection Clause's prohibition of irrational disability discrimination.

No. 07-60997

In *Garrett*, *id*. at 373, the Court emphasized the deference afforded to states under rational-basis review in evaluating title I of the ADA under step three of *City of Boerne*. Title I requires employers to provide reasonable accommodations to disabled employees, a duty that fails step three because it "far exceeds what is constitutionally required":

> For example, whereas it would be entirely rational (and therefore constitutional) for a state employer to conserve scarce financial resources by hiring employees who are able to use existing facilities, the ADA requires employers to "mak[e] existing facilities used by employees readily accessible to and usable by individuals with disabilities." The ADA does except employers from the "reasonable accommodatio[n]" requirement where the employer "can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." However, even with this exception, the accommodation duty far exceeds what is constitutionally required in that it makes unlawful a range of alternative responses that would be reasonable but would fall short of imposing an "undue burden" upon the employer.

*Id*. at 372 (citations omitted, brackets in original). The same reasoning applies to title II's requirement that states provide disabled individuals access to state programs.

Hale and the United States object that the requirements of title II are limited in scope, because a state can show that it is entitled to certain exceptions, thus lessening the extent to which title II's protection surpasses that of the Equal Protection Clause. For example, the state need not comply with title II if it can show that providing access "would fundamentally alter the nature of the service, program, or activity," 28 C.F.R. § 35.130(b)(7), or "would result in . . . undue financial and administrative burdens," *id*. § 35.150(a)(3).

Nonetheless, for at least three reasons, title II limits state activity far more than does rational-basis review. First, a state prison may rationally deny disabled prisoners access to certain programs, even where its reasons fall short

of avoiding an "undue burden" or preventing fundamental alterations to a program. For example, a state may seek to protect the health of a disabled prisoner by preventing him from engaging in overly strenuous activity. Second, title II "makes it the employer's duty to prove that it would suffer such a burden, instead of requiring (as the Constitution does) that the complaining party negate reasonable bases for the employer's decision." *Garrett*, 531 U.S. at 967. Finally, the Equal Protection Clause's requirements are even more minimal here than in *Garrett*, because courts are not well positioned to second-guess the rationality of a state's administration of its prisons.[8]

In summary, Congress's § 5 power is not congruent and proportional and therefore does not justify title II's requirement of equal access for disabled inmates to prison educational and work programs. It follows that title II does not validly abrogate state sovereign immunity for that class of claims. The judgment of dismissal is AFFIRMED.

---

[8] *See Woodford v. Ngo*, 548 U.S. 81, 94 (2006) ("[I]t is 'difficult to imagine an activity in which a State has a stronger interest, or one that is more intricately bound up with state laws, regulations, and procedures, than the administration of its prisons.'" (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 491-92 (1973)); *Turner v. Safley*, 482 U.S. 78, 85 (1987) ("Where a state penal system is involved, federal courts have . . . additional reason to accord deference to the appropriate prison authorities.").