# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 26, 2011

No. 07-60997

Lyle W. Cayce
Clerk

JOHN ASHLEY HALE,

Plaintiff–Appellant,

v.

RONALD KING, Superintendent of Southern Mississippi Correctional Institution; MARGARET BINGHAM, Superintendent of Southern Mississippi Correctional Institution; CHRISTOPHER EPPS, Commissioner of Mississippi Department of Corrections; MIKE HATTEN, Health Service Administrator of Wexford for Southern Mississippi Correctional Institution; JOHN DOE, Physician at Southern Mississippi Correctional Institution; DOCTOR ZANDU, Psychiatrist at Central Mississippi Correctional Facility; DOCTOR PATRICK ARNOLD, Physician for Correctional Medical Services at Southern Mississippi Correctional Institution; DOCTOR WILLIAMS, Psychiatrist of Correctional Medical Services for Southern Mississippi Correctional Institution; DOCTOR TRINCA, Physician for Wexford at Southern Mississippi Correctional Institution; MIRIAM MOULDS, Kitchen Supervisor at Southern Mississippi Correctional Institution; JOHN DOE 2, Chief Executive Officer of Correctional Medical Services for Mississippi Department of Corrections; JOHN DOE 3, Chief Executive Officer of Wexford at Southern Mississippi Correctional Institution for Mississippi Department of Corrections; DOCTOR MCCLEAVE; DOCTOR WOODALL; WEXFORD HEALTH SERVICES,

Defendants–Appellees.

Appeal from the United States District Court
for the Southern District of Mississippi

No. 07-60997

Before JOLLY, SMITH, and OWEN, Circuit Judges.

PER CURIAM:

No member of the panel nor judge in regular active service of the court having requested that the court be polled on Rehearing En Banc (FED. R. APP. P. and 5th Cir. R. 35), the Petition for Rehearing En Banc is DENIED. We GRANT the petition for panel rehearing filed by intervenor the United States and, without hearing oral argument, withdraw our prior opinion, *Hale v. King*, 624 F.3d 178 (5th Cir. 2010) (per curiam), and substitute the following.

This case presents the question of whether certain Mississippi prison officials are entitled to sovereign immunity from claims that they violated Title II of the Americans with Disabilities Act of 1990 (ADA). The district court dismissed the Title II claims against the officials after determining that Title II does not validly abrogate the States' Eleventh Amendment immunity for Title II claims that challenge conduct that does not violate the Fourteenth Amendment to the Constitution. We VACATE and REMAND.

**I**

John Hale, proceeding *pro se* and *in forma pauperis*, filed a lawsuit against the State of Mississippi and a number of individuals who worked at the South Mississippi Correctional Institution (SMCI) or for the Mississippi Department of Corrections (MDOC). Hale's complaint appeared to assert claims for monetary and injunctive relief pursuant to 42 U.S.C. § 1983, based in part on Hale's allegations that he suffered from chronic Hepatitis C, chronic back problems, and psychiatric conditions during his incarceration and that the defendants provided him with inadequate medical care.

Hale subsequently amended his complaint to include claims under Title II of the ADA against certain individual defendants: Ronald King (Superintendent of SMCI), Christopher Epps (Commissioner of MDOC), and Mike Hatten (Health Service Administrator for SMCI) (the Appellees).

No. 07-60997

Specifically, Hale alleged that, under prison regulations, his health problems resulted in his classification as "medical class III" and "psychiatric C." Hale maintained that because of his classification, the Appellees prevented him from using the community work centers, accessing the satellite and regional prison facilities, working in the kitchen, and attending school. He requested compensatory damages against each defendant in his or her individual and official capacity, as well as all filing fees and attorneys fees, and he also sought injunctive relief to bring the MDOC into purported compliance with Title II of the ADA and to prevent his exclusion from participation in MDOC programs.

The district court, proceeding *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2), dismissed Hale's § 1983 and Title II claims after the court determined that Hale's allegations failed to state a claim upon which relief could be granted. With respect to Hale's Title II claims against the Appellees, the district court concluded that Hale could not recover from the Appellees in their individual capacities under the ADA, that Hale's request for injunctive relief was moot because Hale was no longer incarcerated, and that the Eleventh Amendment barred Hale's Title II claims for damages against the Appellees in their official capacities. The district court made its Eleventh Amendment determination after concluding that Title II of the ADA did not validly abrogate the States' sovereign immunity for Hale's claims because "Title II is not a 'congruent and proportional' response [to constitutional violations] in the context of state prisons." In reaching this decision, the district court "assum[ed] *arguendo* that [Hale] would be able to establish a prima facie case under Title II of the ADA."

Hale appealed the district court's holding with respect to the Appellees' Eleventh Amendment immunity. After Hale filed his *pro se* brief on appeal, we appointed counsel to file a supplemental brief to address the question "whether Title II of the ADA validly abrogates Eleventh Amendment sovereign immunity

No. 07-60997

for claims that violate Title II but are not actual violations of the Fourteenth Amendment." The United States intervened and submitted a brief supporting Hale's position.

## II

The district court dismissed Hale's Title II claims pursuant to 28 U.S.C. § 1915(e)(2), which allows it to dismiss an *in forma pauperis* complaint if the complaint "fails to state a claim on which relief may be granted."[1] We review such dismissals de novo, using the same standard applicable to dismissals under FED. R. CIV. P. 12(b)(6).[2] We also review de novo "the question of whether a state is entitled to immunity under the Eleventh Amendment."[3]

In *United States v. Georgia*,[4] the Supreme Court established a three-part test for addressing whether Title II validly abrogates state sovereign immunity in a given case. A court should consider "which aspects of the State's alleged conduct violated Title II" and then determine "to what extent such misconduct also violated the Fourteenth Amendment."[5] If the State's conduct violated both Title II and the Fourteenth Amendment, Title II validly abrogates state sovereign immunity.[6] If the State's conduct violated Title II but did not violate the Fourteenth Amendment, the court must then determine "whether Congress's

---

[1] *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

[2] *Praylor v. Tex. Dep't of Criminal Justice*, 430 F.3d 1208, 1209 (5th Cir. 2005) ("A dismissal for failure to state a claim under § 1915(e)(2)(B)(ii) is reviewed under the same de novo standard of review applicable to dismissals made pursuant to FED. R. CIV. P. 12(b)(6).").

[3] *Siler-Khodr v. Univ. of Tex. Health Sci. Ctr. San Antonio*, 261 F.3d 542, 550 (5th Cir. 2001).

[4] 546 U.S. 151 (2006).

[5] *Id.* at 159.

[6] *Id.*

No. 07-60997

purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid."[7]

## A

It is unclear whether, under *Georgia*, a court is required to determine if allegations state a claim for relief under Title II before proceeding to consider any other issue in the three-part analysis.  We note that at least two other circuit courts have concluded that determining whether there has been a violation of Title II is a necessary first step.[8]  The United States argues that the district court below failed to address whether Title II had been violated—the district court instead assumed that Hale's allegations "establish a prima facie case under Title II of the ADA" before moving on to consider whether Title II validly abrogates state sovereign immunity with respect to Hale's claims.  The United States thus argues that we should remand the case to the district court in order to allow the district court to evaluate in the first instance whether Hale's allegations state a claim for relief under Title II.

Although we do now proceed to consider whether Hale stated a claim for relief under Title II, we do not decide today whether *Georgia prohibits* a court from addressing the validity of Title II's abrogation of state sovereign immunity without first deciding that a claimant's allegations actually state a claim for relief under Title II.  Determining whether Hale has stated a claim for relief

---

[7] *Id.*

[8] *See Bowers v. NCAA*, 475 F.3d 524, 553 (3d Cir. 2007) ("[W]e are required to determine in the first instance if any aspect of the University's alleged conduct forms the basis for a Title II claim."); *Buchanan v. Maine*, 469 F.3d 158, 172-73 (1st Cir. 2006) ("Under *Georgia*, the court must determine in the first instance, on a claim-by-claim basis, which aspects of the State's alleged conduct violated Title II.  If the State's conduct does not violate Title II, the court does not proceed to the next step in the analysis." (internal footnote and citation omitted)).

under Title II requires only that we apply the Rule 12(b)(6) standard to Hale's allegations. We are well-suited to perform this task ourselves.[9]

"Under the 12(b)(6) standard, all well-pleaded facts are viewed in the light most favorable to the plaintiff, but plaintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim."[10] We generally confine our analysis to the complaint and its proper attachments,[11] which "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[12] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[13] The well-pleaded facts must permit the court "to infer more than the mere possibility of misconduct."[14] Because Hale was proceeding *pro se* at the district court, we hold his complaint "to less stringent standards than formal pleadings drafted by lawyers."[15]

A plaintiff states a claim for relief under Title II if he alleges: (1) that he has a qualifying disability; (2) that he is being denied the benefits of services,

---

[9] *See Bowers*, 475 F.3d at 553 n.31 (noting that the court of appeals is "well situated" to determine whether any aspect of the defendant's conduct forms the basis for a Title II claim); *Toledo v. Sanchez*, 454 F.3d 24, 31 n.2 (1st Cir. 2006) (noting that the first step in the *Georgia* analysis "simply requires a legal determination under the standard set out in Fed. R. Civ. P. 12(b)(6)" and proceeding to address that issue in the first instance).

[10] *City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152-53 (5th Cir. 2010).

[11] *See Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006).

[12] *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[13] *Id.*

[14] *Id.* at 1950.

[15] *Calhoun v. Hargrove*, 312 F.3d 730, 733 (5th Cir. 2002) (quotation marks and citations omitted).

## No. 07-60997

programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of his disability.[16] Hale alleged that the Appellees prevented him from using community work centers, accessing satellite and regional prison facilities, working in the prison kitchen, and attending school because he has Hepatitis C, chronic back problems, and psychiatric conditions (including post-traumatic stress disorder). These allegations suffice to establish both the second and third elements of a Title II claim. Prison programs fall within Title II's scope,[17] and Hale has alleged that he was denied access to prison programs because of his medical conditions.

The more difficult question is whether Hale was suffering from a "qualifying disability" under Title II of the ADA when he was excluded from these programs.[18] Before conducting this inquiry, we note that Congress amended the ADA with the ADA Amendments Act of 2008 (ADAAA).[19] Those amendments do not apply retroactively, however.[20] Because Hale's allegations involved conduct occurring prior to the effective date of the ADAAA, we must determine whether Hale was disabled under the ADA prior to its amendment.

---

[16] *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671-72 (5th Cir. 2004).

[17] *See Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998) (holding that a prison is a public entity under Title II and noting that "[m]odern prisons provide inmates with many recreational 'activities,' medical 'services,' and educational and vocational 'programs,' all of which at least theoretically 'benefit' the prisoners (and any of which disabled prisoners could be 'excluded from participation in')").

[18] *See Blanks v. Sw. Bell Communs., Inc.*, 310 F.3d 398, 400 (5th Cir. 2002) ("To establish a *prima facie* case for discrimination under the ADA, a plaintiff must be a qualified individual with a disability."); *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 884 (6th Cir. 1996) (noting that an ADA plaintiff must establish "that she was a 'qualified individual with a disability' *at the time of the discriminatory act*" (emphasis in original)).

[19] Pub. L. No. 110-325, 122 Stat. 3553 (codified as amended in scattered sections of 42 U.S.C.).

[20] *See EEOC v. Agro Distrib. LLC*, 555 F.3d 462, 469 n.8 (5th Cir. 2009).

No. 07-60997

During the period in question, the ADA defined "disability" to mean "'(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment.'"[21]   For the following reasons, we conclude that Hale has not alleged facts from which we can reasonably infer that he suffered from a qualifying disability under the ADA.

**1**

We begin with subsection A.  To establish a claim under subsection A of the definition of disability, a plaintiff must allege that he (1) has a mental or physical impairment that (2) substantially limits (3) a major life activity.[22]   After reviewing Hale's allegations in this case, we are convinced that he has failed to allege facts sufficient to allow us to reasonably infer that Hale met these requirements at the time of the alleged ADA violations.  Specifically, although we assume for the purposes of this decision that Hale's medical conditions constitute physical or mental impairments under the ADA, Hale has failed to allege that his conditions substantially limited him in his performance of a major life activity.

"Major life activities" are "those activities that are of central importance to daily life."[23]   The Equal Employment Opportunity Commission's regulations implementing the ADA provide a non-exhaustive list of "major life activities."  Such activities include "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."[24]   "[T]o be

---

[21] *Dupre v. Charter Behavioral Health Sys. of Lafayette, Inc.*, 242 F.3d 610, 613 (5th Cir. 2001) (quoting former 42 U.S.C. § 12102(2) (current version at 42 U.S.C. § 12102(1)).

[22] *Id.*

[23] *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 197 (2002).

[24] 29 C.F.R. § 1630.2(i) (2010).

substantially limited means to be unable to perform a major life activity that the average person in the general population can perform, or to be significantly restricted in the ability to perform it."[25]  In making that determination, the EEOC has advised that we consider: "'(i) the nature and severity of the impairment, (ii) the duration or expected duration of the impairment; and (iii) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.'"[26]

Hale's initial complaint identified his ailments as "chronic back pain, chronic Hepatitis-C and psychiatric condition."  The complaint did little to expound on the impact of these conditions on Hale's health.  Although the complaint at one point alleged that Hale "lost (36) thirty-six pounds since coming to SMCI, and the plaintiff was sentenced to do time not to have his liver deliberately destroyed," the primary allegations of the complaint consisted of Hale's recounting of his interactions with and requests for prescriptions from various prison doctors.  Basically, the complaint argued that Hale's conditions require that he receive certain prescriptions and treatments that the various defendants named in the complaint were not providing.  Hale did attach to this complaint medical records stating that Hale was suffering from various ailments, but those records did not contain facts regarding the impact of Hale's ailments on his ability to perform major life activities.

We also consider the allegations in Hale's motion for injunctive relief.[27]  In that motion, Hale identified his ailments as "Hepatitis-C (Hep-C), Post

---

[25]  *EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 614 (5th Cir. 2009) (citing 29 C.F.R. § 1630.2(j)).

[26]  *Id.* at 614-15 (quoting 29 C.F.R. § 1630.2(j)).

[27]  *See Howard v. King*, 707 F.2d 215, 220 (5th Cir. 1983) (holding that a district court was "required to look beyond the inmates' formal complaint and to consider as amendments to the complaint those materials subsequently filed [with the inmates' motion for a preliminary injunction]").

No. 07-60997

Tr[au]matic Stress Dis[]order, C[h]ronic Depression, Intermittent Explosive D/O, Personality D/O." As with his original complaint, the motion for injunctive relief failed to detail the impact of these conditions on Hale's ability to perform major life activities. It instead argued that he needed certain medical treatment or he would "continue to suffer substantial pain, anxiety, and potential complications of a life threatening nature." Hale attached to his motion the same medical records that he attached to his complaint, as well as several articles that provide background information on Hepatitis C.

Next, we consider the allegations in Hale's motion to amend his complaint to include the Title II ADA claim. Those allegations claimed that Hale was "denied access to sat[e]llites of MDOC and even work in the prison kitchen because the plaintiff [was] classified as medical class III, and [was] denied as per MDOC policies." Hale also claimed that he "was sent back from the MDOC Restitution Center in Hinds County due to his medical and psychiatric conditions and MDOC failure to accom[m]odate the disabilities of the plaintiff." Again, however, the allegations failed to detail the impact of Hale's conditions on his ability to perform major life activities.

Finally, we consider Hale's explication of his claims during the *Spears*[28] hearing held on June 29, 2007. During the hearing, Hale, when the magistrate judge conducting the hearing asked him how his Hepatitis C was currently affecting him, noted only:

> Well, my liver enzymes, they've gone up and down. But you can't really tell by the blood tests. Actually to know the liver damage, you would have to have a biopsy, which they haven't done either. That information is all in there. The blood tests are an okay indicator as far as that goes, but it's not accurate as far as what the liver looks like or how it is, what kind of condition it's in.

---

[28] *See Spears v. McCotter*, 766 F.2d 179, 181-82 (5th Cir. 1985).

No. 07-60997

Hale also described his PTSD: "I have panic attacks. I have my heart beat real fast. It's a very physical feeling. It's bad." Again, these alleged facts show, at most, that Hale suffered from an impairment at the time of the alleged ADA violations.

We conclude that Hale's allegations only establish that he suffered from PTSD, Hepatitis C, and other ailments during the time of his incarceration. It is well established that "[m]erely having an impairment . . . does not make one disabled for purposes of the ADA."[29] Absent allegations that Hale's ailments substantially limited him in the performance of a major life activity, Hale has failed to state a claim for relief under subsection A of the ADA's definition of disability.[30]

**2**

Hale similarly has not sufficiently alleged that he was disabled under subsection B of the ADA's definition of disability. A plaintiff proceeding under subsection B must allege that he "has a record of an injury or impairment" and that the "impairment limited a major life activity."[31] Hale's allegations are flawed under subsection B for the same reason that they are flawed under subsection A—Hale failed to allege facts from which we can reasonably infer that Hale's medical conditions substantially limited a major life activity.

---

[29] *Chevron Phillips Chem. Co.*, 570 F.3d at 614.

[30] *See Furnish v. SVI Sys., Inc.*, 270 F.3d 445, 450 (7th Cir. 2001) ("[U]nder the ADA, even a serious illness such as Hepatitis B does not equate with a disability. Only when the impact of the illness substantially limits a major life activity—such as working—is an individual considered disabled within the meaning of the ADA."); *Hamilton v. Sw. Bell Tel. Co.*, 136 F.3d 1047, 1050 (5th Cir. 1998) (noting that PTSD alone "is not necessarily a disability contemplated by the ADA" and that "[t]he statute requires an impairment that substantially limits one or more of the major life activities").

[31] *Dupre v. Charter Behavioral Health Sys. of Lafayette, Inc.*, 242 F.3d 610, 615 (5th Cir. 2001).

No. 07-60997

**3**

Finally, we consider subsection C, which "permits suits 'by plaintiffs who, though not actually disabled per § 12102(2)(A), are nonetheless regarded as having such an impairment.'"[32] "To meet this standard, a plaintiff must show either that '(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities.'"[33] We have assumed for purposes of this case that Hale's allegations establish he was suffering from an actual impairment during his incarceration. With respect to subsection C, the question thus is whether the Appellees perceived Hale's impairments as substantially limiting him in one or more major life activities.

During his *Spears* hearing, Hale provided the following explanation of his Title II claim:

> What it is is when they make you a medical class three or if you're a psychiatric C, they have a custom or practice—I don't know if it's a written policy or just a custom or practice—but they will not let you go to the satellite. They will not let you go to the regional facilities or private facility or anything like that. They just warehouse you right there in that one spot. You can't—no chance for advancement. They denied me going to school. I tried to get a job in the central kitchen. They said, "Naw, you can't get it because you're a psychiatric C, medical class three."

We cannot reasonably infer from these facts that the Appellees regarded Hale as disabled. Hale's allegations only establish that the Appellees denied him access to prison programs and facilities because of his impairments. They do not establish that the Appellees actually perceived Hale as having more of an

---

[32] *Kemp v. Holder*, 610 F.3d 231, 237 (5th Cir. 2010) (quoting *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 508 (5th Cir. 2003) (quotation marks and citation omitted)).

[33] *Id.* (quoting *Sutton v. United Air Lines*, 527 U.S. 471, 489 (1999)).

No. 07-60997

impairment than he actually had or regarded him as being substantially limited in any major life activity.[34]  Of course, it is possible that the Appellees denied Hale access to these facilities because they mistakenly perceived Hale's impairments as substantially limiting his ability to go to school or work in the prison kitchen, but we cannot say that such a conclusion would be plausible on these facts.[35]  Indeed, Hale alleged in one of his handwritten affidavits submitted during the *Spears* hearing that an official at the MDOC Restitution Center in Hinds County stated that Hale was returned to the county jail because the center was not equipped to handle Hale's problems.  This statement suggests Hale was denied access to the restitution center because the center lacked the capacity to treat Hale's impairments, not because the Appellees perceived Hale's impairments to substantially limit a major life activity.  Accordingly, Hale has failed to allege that he was disabled under subsection C of the ADA's definition of disability.

### III

We now consider whether we should remand this case to the district court in order to allow Hale an opportunity to amend his complaint to state a valid Title II claim.  Specifically, we note that Hale was acting *pro se* during the district court proceedings.  We have held that district courts should not dismiss *pro se* complaints pursuant to Rule 12(b)(6) without first providing the plaintiff an opportunity to amend, unless it is obvious from the record that the plaintiff

---

[34] *Cf. Dupre*, 242 F.3d at 616.

[35] *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks and citation omitted)).

13

has pled his best case.[36]  Although the district court did hold a *Spears* hearing in this case, and we have identified such hearings as appropriate vehicles for "remedying inadequacy in prisoner pleadings,"[37] it was at the *Spears* hearing that Hale was allowed to amend his complaint to bring his Title II claim.  The district court then dismissed the claim *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2).  Thus, it does not appear that Hale has had an opportunity to amend his Title II claim after being alerted to its deficiencies.  Were we to affirm the district court without remanding, our opinion would have the same effect as a 12(b)(6) dismissal of Hale's complaint for failure to state a claim without allowing him an opportunity to remedy the deficiencies in his complaint.

Accordingly, we remand this case to the district court in order for the district court to allow Hale to amend his Title II allegations.  Exercising judicial restraint, we do not proceed to the other two prongs of the *Georgia* inquiry at this time because such an inquiry, which would include resolution of constitutional issues, is unnecessary unless and until Hale has stated a violation of Title II.[38]  We vacate the portions of the district court's decision below that address whether Hale's allegations established violations of the Fourteenth Amendment and whether Title II validly abrogates state sovereign immunity for Hale's claims.[39]  On remand Hale will have the opportunity to amend, and if he

---

[36] *See Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (per curiam). *See also Peña v. United States*, 157 F.3d 984, 987 n.3 (5th Cir. 1998) ("Because [Rule 12(b)(6)] dismissals [of *pro se* complaints] are disfavored, a court should grant a *pro se* party every reasonable opportunity to amend.").

[37] *Eason v. Thaler*, 14 F.3d 8, 9 (5th Cir. 1994).

[38] *See Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988) ("A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them.").

[39] *See Brockman v. Tex. Dep't of Criminal Justice*, 397 F. App'x 18, 24 (5th Cir. 2010) (unpublished) ("Previously, when lower courts have unnecessarily reached issues concerning the constitutionality of the ADA's abrogation of sovereign immunity, the offending portions

No. 07-60997

does so, the district court can determine whether Hale's amended allegations state a claim for relief under Title II and any other issues that flow from the court's determinations.

\* \* \*

For the aforementioned reasons, we VACATE and REMAND for proceedings consistent with our opinion.

---

of their decisions have been vacated on appeal.").