# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 19, 2022

Lyle W. Cayce
Clerk

No. 21-50791

Cameron Luke,

*Plaintiff—Appellant*,

*versus*

State of Texas; Lee County, Community Supervision and Corrections Department; San Jacinto County, Texas, Community Supervision and Corrections Department; Lee County,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:20-CV-388

Before Richman, *Chief Judge*, and Costa and Ho, *Circuit Judges*.
Gregg Costa, *Circuit Judge*:

Cameron Luke, who is deaf, was arrested for marijuana possession. Throughout his encounter with the criminal justice system—during his arrest, court proceedings, and interactions with probation officers—he was denied a sign language interpreter. The question is whether denying a deaf defendant an interpreter during his criminal proceedings violates the Americans with Disabilities Act. The answer is yes.

No. 21-50791

I

Like many deaf individuals, Luke has trouble speaking and reading English.[1]  He also has difficulty lip reading.  So in order to effectively communicate, Luke requires an American Sign Language (ASL) interpreter.

Such an interpreter was never provided during Luke's case for marijuana possession.  No interpreter was provided the night of his arrest during a traffic stop, even though his mother, who was watching the scene via FaceTime, urged the officers to provide him with one.  No interpreter was present when Luke was booked and detained at Lee County Jail.  Nor was one present when a Lee County justice of the peace arraigned him and released him on bond.  No interpreter ever explained to Luke his legal rights, the charges against him, or the terms and conditions of his bail.

The county court said that an interpreter would be provided for the hearing at which Luke was going to plead guilty in exchange for one year of probation.  But the court did not follow through on that commitment.  Instead, it insisted that Luke's mother, who has only basic knowledge of sign language, interpret for her son during the hearing.  Thus, no qualified interpreter ever explained to Luke the terms of his probation.

Luke's experience on probation, which began with Lee County's Community Supervision Corrections Department but was later transferred to San Jacinto County's, was more of the same.  Neither department provided Luke with an interpreter for his meetings with probation officers.  Just like at the hearing, the probation officers instead had Luke's mother interpret for him.  No qualified interpreter ever explained to Luke what

---

[1] We accept as true all factual allegations in the complaint as this case was dismissed at the pleadings stage.  *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 164 (1993).

No. 21-50791

happened during those meetings or whether he was satisfying the terms of his probation.

Contending that the lack of interpreters left him "isolated and confused" during the criminal proceedings, Luke sued the following entities under Title II of the Americans with Disabilities Act: (1) Lee County, which operated the jail and court; (2) the Community Supervision and Corrections Departments of both Lee County and San Jacinto County (the "Supervision Departments"), the Texas state agencies that oversaw his probation; and (3) the State of Texas.[2]  Luke sought injunctive relief against the Supervision Departments and the State of Texas and compensatory and nominal damages from all defendants.

The district court dismissed all of Luke's claims at the pleading stage. It initially dismissed claims against the Supervision Departments on the ground that Luke's claims were moot because he had successfully completed probation.  Responding to Luke's motion to reconsider the mootness dismissal because he also sought damages, the court maintained the dismissal but gave a different reason.  This time it concluded the Supervision Departments enjoyed sovereign immunity.  The court then granted Lee County's motion for judgment on the pleadings, again on sovereign immunity grounds.  The court also granted Texas's motion to dismiss for improper service of process because Luke served the wrong Texas official. Luke appeals.

II

The district court dismissed Luke's claims against Lee County and the Supervision Departments on sovereign immunity grounds, using the

---

[2] Luke also sued Lee County judges in their official capacity, but the district court dismissed those claims as redundant of the ones against the county.

same reasoning for all those entities. But there is a basic problem with its sovereign immunity dismissal of the county: Lee County is a political subdivision of Texas, rather than an arm of the State, and thus does not enjoy state sovereign immunity. *See Alden v. Maine*, 527 U.S. 706, 756 (1999) ("The immunity does not extend to suits prosecuted against a municipal corporation or other governmental entity which is not an arm of the State."); *Stratta v. Roe*, 961 F.3d 340, 352 (5th Cir. 2020) ("Counties, of course, are not entitled to Eleventh Amendment immunity.").

Still, the district court's reasons for dismissing Lee County could support a dismissal even outside a sovereign immunity framework. That is because the district court's conclusion that Congress had not abrogated sovereign immunity for this type of suit is akin to a conclusion that Luke did not state a violation of Title II of the ADA. The abrogation inquiry for Title II claims requires an inquiry into: "(1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid." *United States v. Georgia*, 546 U.S. 151, 159 (2006). In considering the first step, the district court concluded that Luke did not identify a violation of Title II. That is akin to ruling that he failed stated a claim under Rule 12(b)(6). So if correct, the district court's ruling would support a sovereign immunity dismissal against the Supervision Departments that are state agencies and a dismissal for failure to state a claim against Lee County.

But the district court was mistaken; Luke did allege disability discrimination. To make out a claim under Title II, Luke had to show: (1) that he is a qualified individual with a disability; (2) that he was excluded from participation in, or denied the benefits of, services, programs, or activities for

which the public entity is responsible, or was otherwise being discriminated against; and (3) that such discrimination is because of his disability. 42 U.S.C. § 12132; *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011).

Luke's deafness makes him a qualified individual with a disability. *See* 42 U.S.C. § 12131(2); *see also Delano-Pyle v. Victoria County*, 302 F.3d 567, 575–76 (5th Cir. 2002). And Luke can show that he was discriminated against because of his disability as both Lee County and the Supervision Departments knew he was deaf yet failed to provide an accommodation despite multiple requests for an interpreter. *See Windham v. Harris County*, 875 F.3d 229, 235 (5th Cir. 2017). Title II regulations list "auxiliary aids," including "[q]ualified interpreters," as reasonable accommodations that public entities "shall" provide when necessary. 28 C.F.R. § 35.160(b)(1); *id.* § 35.104.

Luke also alleges that he was denied the benefit of "meaningful access" to public services. *See Alexander v. Choate*, 469 U.S. 287, 301 (1985)[3]; *see also Cadena v. El Paso County*, 946 F.3d 717, 725 (5th Cir. 2020). He says that he was not able to understand his legal rights or effectively communicate throughout his proceedings. Not being able to understand a court hearing or meeting with a probation officer is, by definition, a lack of meaningful access to those public services. Indeed, a core purpose of Title II is for public entities to "accommodate persons with disabilities in the administration of justice." *See Tennessee v. Lane,* 541 U.S. 509, 533 (2004).

---

[3] While *Alexander* adopted the "meaningful access" standard in the context of the Rehabilitation Act, the ADA and Rehabilitation Act are interpreted *in pari materia*. *Frame v. City of Arlington*, 657 F.3d 215, 223–24 (5th Cir. 2011). Cases interpreting the applicable standards under one of the statutes are thus applicable to both. *Delano-Pyle v. Victoria County*, 302 F.3d 567, 574 (5th Cir. 2002).

It was on this element that the district court rejected Luke's claims. It reasoned that Luke was not denied a public service because he "successfully participated in, availed himself of, and completed the terms of his probation." In other words, the criminal case turned out okay for Luke.

This no-harm-no-foul theory is inconsistent with the ADA. Nothing in the statute's text or the caselaw applying it requires Luke to have alleged a bad outcome—something like being wrongly arrested, getting his bail or probation revoked, or mistakenly entering a guilty plea because of confusion without an interpreter. And for good reason: Lack of meaningful access is *itself* the harm under Title II, regardless of whether any additional injury follows. *See Lane*, 541 U.S. at 532–33. Luke's Title II injury is not being able to understand the judges and probation officers as a nondeaf defendant would.

Under the district court's reasoning, a state could refuse to provide an ASL interpreter at a deaf individual's trial and then avoid Title II liability if the defendant is acquitted. Courts have rightly rejected that position. *See, e.g.*, *Robertson v. Las Animas Cnty. Sheriff's Dep't*, 500 F.3d 1185, 1199 (10th Cir. 2007) (holding that failing to provide deaf arrestee with auxiliary aids at probable cause hearing constituted a Title II injury even though the charges were dismissed); *Chisolm v. McManimon*, 275 F.3d 315, 328–30 (3d Cir. 2001) (recognizing that denying deaf plaintiff auxiliary aids during his criminal proceedings could amount to Title II violation even though the charges against him were quashed); *Duvall v. County of Kitsap*, 260 F.3d 1124, 1137–38 (9th Cir. 2001) (concluding that failure to provide deaf individual effective auxiliary aids during his trial can violate Title II without regard for that trial's outcome); *see also Perez v. Drs. Hosp. at Renaissance, Ltd.*, 624 F. App'x 180, 184 (5th Cir. 2015) (holding that jury could find that hospital's failure to provide effective auxiliary aids to deaf patient violated Title III despite patient not suffering any additional harm).

The positive outcome of Luke's criminal case may, of course, affect his damages.[4] But it does not allow courts to escape their ADA obligations.

Even with this understanding of Title II, the Supervision Departments contend there is no ADA violation because Luke's mother served as an interpreter. But taking Luke's allegations as true, his mother knows only basic sign language. His mother's involvement thus did not fully inform him of the proceedings or otherwise provide the meaningful access the ADA requires. What is more, public entities cannot force a disabled person's family member to provide the interpretation services for which the entity is responsible. *See* 28 C.F.R. § 35.160(c)(2).

Luke thus has sufficiently stated a Title II claim. This means his claim against Lee County should proceed past the pleading stage.

It is not so simple for the Supervision Departments. We hold only that Luke's allegations satisfy step one of the abrogation test. The inquiry should now proceed to the second and, if necessary, third step. *See Georgia*, 546 U.S. at 159. These difficult abrogation questions would benefit from full briefing and initial consideration by the district court.

---

[4] The district court thought that Luke failed to specifically allege facts supporting compensatory damages. We disagree. Luke alleged that not being able to understand the proceedings against him caused him "fear, anxiety, indignity, [and] humiliation." A separate issue, however, is whether compensatory damages are available to Title II plaintiffs at all. After oral argument, the Supreme Court held that emotional distress damages are not recoverable for disability discrimination under the Rehabilitation Act. *Cummings v. Premier Rehab Keller, P.L.L.C.*, 142 S. Ct. 1562, 1576 (2022). We leave it for the district court to decide the effect, if any, *Cummings* has on Luke's ability to recover emotional distress damages under Title II. In any event, Luke also seeks nominal damages. *See Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 799–800 (2021).

No. 21-50791

III

This leaves the claim against the State of Texas. We struggle to see what suing Texas directly does for Luke given that he has also sued the state agencies (the Supervision Departments) that oversaw his probation. In any event, the district court did not abuse its discretion in dismissing Texas for improper service. For plaintiffs to sue a state in federal court, they must either: (1) serve the state's "chief executive officer"; or (2) provide service in a manner prescribed by that state's law. FED. R. CIV. P. 4(j)(2). Luke did neither. The governor is Texas's chief executive officer, but Luke served the Secretary of State. *See* TEX. CONST. art. IV, § 1. And no state law authorizes the Secretary of State to accept service on behalf of Texas in ADA cases. Luke points to a state law allowing the Secretary of State to accept service for claims that arise under the Texas Tort Claims Act and argues that it applies here because ADA suits are analogous to TTCA suits. *See* TEX. CIV. PRAC. & REM. CODE § 101.102. But whether they are analogous is of no moment. The statute limits the service-of-process provision to claims arising "under th[at] chapter," which ADA claims do not. *Id.* Luke's service on the Secretary of State was therefore improper and the claim was correctly dismissed without prejudice.

\* \* \*

We REVERSE the dismissal of Luke's claim against Lee County, VACATE the dismissal against the Supervision Departments, and AFFIRM the dismissal against Texas. We REMAND for further proceedings consistent with this opinion, including consideration of whether Congress validly abrogated state sovereign immunity for the claims against the Supervisions Departments.

8