# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

February 24, 2014

Lyle W. Cayce
Clerk

No. 12-31218

M.C. MOORE, as father and next friend to minors Joyce Marie Moore, Jerry Moore, and Thelma Louise Moore; HENRY SMITH, as father and next friend to minors Bennie Smith, Charles Edward Smith, Shirley Ann Smith, and Earline Smith,

                          Plaintiffs – Appellees

v.

LOUISIANA BOARD OF ELEMENTARY AND SECONDARY EDUCATION; LOUISIANA DEPARTMENT OF EDUCATION; JOHN WHITE,

                          Movants – Appellants

Appeals from the United States District Court
for the Eastern District of Louisiana

Before OWEN, SOUTHWICK, and GRAVES, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

The Louisiana Board of Elementary and Secondary Education, the Louisiana Department of Education, and John White, Superintendent of Education, appeal the grant of an injunction prohibiting them from implementing Act 1 and Act 2 of the 2012 Regular Session of the Louisiana Legislature. Finding all issues related to Act 2 moot and a lack of jurisdiction to enjoin Act 1, we VACATE the injunction and REMAND for dismissal of all issues related to Acts 1 & 2.

No. 12-31218

FACTUAL AND PROCEDURAL BACKGROUND

This appeal is from recent decisions by the district court in a lawsuit filed against the Tangipahoa Parish School Board in 1965. In 2010, the district court entered a Consent Decree which required various actions and defined various responsibilities of the School Board. In 2012, the plaintiffs filed an action against the School Board, the Louisiana Board of Elementary and Secondary Education ("BESE"), the Louisiana Department of Education, and John White, Superintendent of Education,[1] pursuant to the All Writs Act. *See* 28 U.S.C. § 1651. The action sought an injunction prohibiting the implementation of two acts passed in the 2012 Regular Session of the Louisiana Legislature on the basis that implementation of the acts would violate the Consent Decree. Act 1 of the 2012 legislature adjusted the standards for evaluating and discharging ineffective teachers. Act 2 permitted Minimum Foundation Program ("MFP") funds[2] to be allocated to individual students as vouchers to attend private schools or pay for supplemental courses from various other education providers.

Act 1 vests authority for school staffing decisions primarily with school superintendents and principals. It also permits an "ineffectiveness" criterion to be used as the sole basis for discharging teachers. Before Act 1, discharging a teacher required substantial documentation of "poor performance, incompetence or willful neglect of duty." *See* LA. REV. STAT. 17:443(D). Act 1

---

[1] We refer to the BESE, Louisiana Department of Education, and Superintendent of Education John White as the "state defendants" to distinguish them from the School Board, which, while the nominal defendant in the desegregation case, was pursuing interests adverse to the state with respect to Acts 1 & 2 prior to *Louisiana Federation of Teachers v. State of Louisiana,* 118 So. 3d 1033, 1050-56 (La. 2013).

[2] The Minimum Foundation Program is a creation of the Louisiana Constitution. It created the BESE and charges it with determining the amount of funds needed to provide a minimum level of education to Louisiana's children and allocating the funds among the state's school districts. *See* LA. CONST. ART. VIII, §13(B).

No. 12-31218

relieves superintendents of these stricter requirements by permitting a finding of ineffectiveness alone to be a basis for a finding of "poor performance, incompetence, or willful neglect of duty." *See* LA. REV. STAT. 17:443(D); *see also* LA. REV. STAT. 17:3881 (setting forth the criteria for effectiveness determinations). Nonetheless, Act 1 contains a provision explicitly directing all public schools to carry out their obligations under that Act in accordance with existing desegregation orders. *See* LA. REV. STAT. 17:81(A)(5).

The 2010 Consent Decree includes provisions designed to increase the percentage of black teachers in the Tangipahoa Parish school district. The Consent Decree sets forth specific procedures the School Board is to implement in its hiring process, such that it will be more likely to hire black teachers to fill open teaching positions. The Consent Decree does not include a set of procedures for evaluation of black teachers' performance, nor does it make any special rules for discharge of black teachers. The Consent Decree also provides for the construction of new schools, the implementation of various new programs, and new student-school assignments based upon the new construction and programs. The plaintiffs allege Act 1 interferes with the Consent Decree by allowing subjective evaluations of teachers that might frustrate the Consent Decree's provisions for increasing the proportion of black teachers in Tangipahoa Parish.

Act 2 creates a school voucher program which diverts MFP funds from the school districts to individual children so they can use the funds to attend a private school or take courses not offered in their public schools from other independent course providers. Thus, each dollar that accompanies a child to a new school or is used to pay for an additional course is deducted from the budget of the school district the student departed. The School Board agreed with plaintiffs that Act 2 interfered with its compliance with the Consent Decree.

3

No. 12-31218

In October 2012, the district court issued writs requiring the state defendants to show cause why a preliminary injunction should not be entered to stop the implementation of the voucher mechanisms in Act 2 that permit students to use public funds to attend private schools.  Later, the plaintiffs expanded their request for relief to include enjoining payments of public funds to the entities providing additional courses and the Act 1 teacher evaluation provisions.  The district court held a hearing on November 26, 2012 regarding whether Act 1 and Act 2 should be enjoined.  At the conclusion of the hearing, the district court orally granted an injunction. The state defendants unsuccessfully moved the district court for a stay pending appeal, and a written order enjoining the Acts was entered on November 28.  The district court based the injunction on the All Writs Act and the court's inherent authority to protect its own orders.  Meanwhile, on November 30, a state trial court held Act 2 unconstitutional under the Louisiana Constitution.  This Court granted a stay pending appeal on December 14, 2012.

On May 7, 2013, the Louisiana Supreme Court affirmed the state trial court, holding Act 2 unconstitutional under the Louisiana Constitution.  The court held that Article VIII, § 13(B) of the Louisiana Constitution forbade Act 2's diversion of funds from the school districts to educational entities other than the public schools.  *See Louisiana Fed'n of Teachers*, 118 So. 3d at 1055.

The School Board soon moved for its dismissal from this appeal on the grounds that the state supreme court's decision mooted all issues pertaining to the School Board and the implementation of Act 2.  This Court granted that motion on July 19, 2013, concluding that all issues affecting the School Board were moot.  Before us now is the question of whether all issues pertaining to Act 2 are moot as to all defendants and whether or not the district court abused its discretion by enjoining the implementation of Act 1.

4

No. 12-31218

DISCUSSION

A district court's grant of an injunction is reviewed for abuse of discretion, with findings of fact reviewed for clear error and conclusions of law supporting the injunction reviewed *de novo*. *Affiliated Prof'l Home Health Care Agency v. Shalala*, 164 F.3d 282, 284-85 (5th Cir. 1999). The question of whether state defendants are entitled to sovereign immunity is likewise reviewed *de novo*. *Hale v. King*, 642 F.3d 492, 497 (5th Cir. 2011).

### A. Are All Issues Pertaining to Act 2 Moot?

We start our review by analyzing whether the plaintiffs' claims with respect to Act 2 are moot following the Louisiana Supreme Court's decision in *Louisiana Federation of Teachers*. We find instructive a decision involving whether a city was legally permitted to charge a company various fees. *AT&T Commc'n of Sw., Inc. v. City of Austin*, 235 F.3d 241, 244 (5th Cir. 2000). By the time of our review of a district court's ruling, the city had repealed the ordinance requiring the fees and had waived any right to collect past-due fees. *Id.* We held the question of whether the city was legally permitted to charge these fees was moot, since the city no longer had any claim to the fees and the company was no longer obligated to pay them.

The plaintiffs' claims with regard to Act 2 rest upon the diversion of funds from the public school system to private schools or other non-public educational organizations. The essence of this claim was that the diverted funds could not be used to pay for various projects contemplated by the Consent Decree, and therefore impaired the ability of the School Board to comply. This impairment, in turn, would harm the students of the school district by depriving them of the benefits to which they were entitled under the Consent Decree.

No. 12-31218

The Louisiana Supreme Court has now invalidated this provision of Act 2, holding that the state constitution required all MFP funds to be allocated to public schools and not be diverted elsewhere. *Louisiana Fed'n of Teachers*, 118 So. 3d at 1055. Consequently, the School Board and plaintiffs no longer face the threat of losing those funds. Whatever impairment or injury to the plaintiffs might have arisen from diversion of MFP funds from the school district cannot now occur.

As there is no longer any threat to the Consent Decree or the students in Tangipahoa Parish from the diversion of MFP funds, all issues pertaining to Act 2 are moot. "Where an appeal is dismissed by reason of mootness, the appellate court is to vacate the decision below and direct that it be dismissed for mootness, so that it will spawn no legal consequences." *Lebus for and on Behalf of N.L.R.B. v. Seafarers' Int'l Union of N. Am., Atlantic, Gulf, Lakes and Inland Waters Dist., AFL-CIO*, 398 F.2d 281, 283 (5th Cir. 1968). The district court shall dismiss all issues pertaining to Act 2 as moot.

### B. Did the District Court have Jurisdiction to Enjoin the State Defendants?

The Eleventh Amendment codified the sovereign immunity of the several states. *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267 (1997). Federal courts are without jurisdiction over suits against a state, a state agency, or a state official in his official capacity unless that state has waived its sovereign immunity or Congress has clearly abrogated it. *Id.*; *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 55 (1996). Despite this bar, a federal court may enjoin a state official in his official capacity from taking future actions in furtherance of a state law that offends federal law or the federal Constitution. *See Coeur d'Alene Tribe of Idaho*, 521 U.S. at 269 (citing *Ex Parte Young*, 209 U.S. 123 (1908)). Only state officials, not state agencies, may be enjoined.

6

No. 12-31218

*Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993).  Whether state defendants are entitled to sovereign immunity is a question of law, reviewed *de novo* on appeal.  *See King*, 642 F.3d at 497.

The plaintiffs sought an injunction against the BESE and the Louisiana Department of Education.  The state defendants argue that as to the two agencies, this suit is substantially a suit against the state itself.  We agree.  The *Young* exception "has no application in suits against the States and *their agencies*, which are barred regardless of the relief sought." *See Metcalf & Eddy*, 506 U.S. at 146. (emphasis added).  Two of the state defendants, the BESE and the Department of Education, are not individual officers, but rather agencies of the state. We conclude the district court abused its discretion by exercising jurisdiction over the two state agency defendants, which enjoy sovereign immunity against such exercises of jurisdiction.

White is the Superintendent of Education for the State of Louisiana.  Plaintiffs sued to enjoin him from implementing and enforcing Act 1 because the Act's provisions are "contrary [to] the remedial nature" of the Consent Decree with respect to employment of black teachers.  Plaintiffs further contend that the new termination framework is "subjective" and therefore "open[s] the door to restoration of the standard less subjectivity that impacted on the presence of black teachers" in Tangipahoa Parish.  These claims are apparently based on allegations of discrimination credited by the district court during the course of the desegregation proceedings in the parish.  Nonetheless, no party has presented any evidence that White has yet taken any action pursuant to Act 1 that has violated federal law, nor that his implementation of Act 1 will result in a direct violation of federal law.  *See Coeur d'Alene Tribe of Idaho*, 521 U.S. at 269.  The district court did not make factual findings regarding any present or future implementation efforts, but merely concluded that the teacher discharge provisions might frustrate the Consent Decree's

stated goal of increasing the number and proportion of black teachers. It is true that a federal court may enjoin a state official in his official capacity from taking future actions in furtherance of a state law that offends federal law or the federal Constitution. *Id.* (citing *Ex Parte Young,* 209 U.S. 123). Far from presenting evidence of a potential violation of the federal constitution or law, though, the plaintiffs have not even shown that anything White has done or may validly do under Act 1 creates a tangible conflict with the Consent Decree in light of Act 1's plain statement that it shall be implemented in compliance with all desegregation orders.

Since the BESE and the Louisiana Department of Education are agencies and suing them is the same as suing the State of Louisiana itself, we conclude the district court lacked jurisdiction to enter an injunction against the two state agency defendants. *See Metcalf & Eddy*, 506 U.S. at 146. White cannot be enjoined without some showing that Act 1 is causing or will cause him to violate federal law and that the prospective relief is necessary to prevent such a violation. *See Young*, 209 U.S. at 159-60. Since the state defendants enjoy sovereign immunity, and the *Young* exception is inapplicable, we conclude the district court abused its discretion by entering the injunction barring the implementation of Act 1.

The injunction is VACATED and this case REMANDED for dismissal of all claims.