# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

March 20, 2017

Lyle W. Cayce
Clerk

No. 16-51023

AIR EVAC EMS, INCORPORATED,

      Plaintiff - Appellant

v.

STATE OF TEXAS, DEPARTMENT OF INSURANCE, DIVISION OF
WORKERS' COMPENSATION; DAVID MATTAX, Texas Commissioner of
Insurance, in his official capacity; RYAN BRANNAN, Texas Commissioner of
Workers' Compensation, in his official capacity,

      Defendants - Appellees

v.

TEXAS MUTUAL INSURANCE COMPANY; LIBERTY MUTUAL
INSURANCE COMPANY; ZENITH INSURANCE COMPANY; HARTFORD
UNDERWRITERS INSURANCE COMPANY; TWIN CITY FIRE
INSURANCE COMPANY; TRANSPORTATION INSURANCE COMPANY;
VALLEY FORGE INSURANCE COMPANY; TRUCK INSURANCE
EXCHANGE,

      Intervenor Defendants - Appellees

Appeal from the United States District Court
for the Western District of Texas

No. 16-51023

Before JONES, BARKSDALE, and COSTA, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

Primarily at issue is whether an air-ambulance company, claiming federal preemption of Texas' workers'-compensation scheme, satisfies the equitable exception to the Eleventh Amendment, as provided in *Ex parte Young*, 209 U.S. 123, 155–56 (1908). It does. For this and other reasons, federal jurisdiction exists. Moreover, we decline to abstain under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). VACATED and REMANDED.

I.

Air Evac EMS, Incorporated, filed this action against, *inter alia*, the Texas Commissioner of Insurance and the Texas Commissioner of Workers' Compensation (state defendants), claiming that, as applied to air-ambulance entities, Texas' workers'-compensation system is federally preempted. Because the Airline Deregulation Act (ADA) expressly preempts all state laws "related to a price, route, or service of an air carrier", Air Evac maintains Texas may not use state laws to regulate air-ambulance services. 49 U.S.C. § 41713(b)(1).

Air Evac's air ambulances depart from more than 20 sites in Texas. And, Air Evac holds an assortment of licenses from federal and state regulators, including the United States Department of Transportation, Federal Aviation Administration, and Texas. Being an emergency-transportation service, Air Evac must accept patients regardless of either their ability to pay or the source of their payment. As a result, Air Evac often seeks payment for its services through the Texas Workers' Compensation Act (TWCA).

TWCA established a state-regulated insurance market, in which Texas licenses private insurers to sell workers'-compensation policies to employers.

2

*See* Tex. Labor Code §§ 401.001–419.007. Two critical features of this framework are relevant to the action at hand: a maximum-reimbursement system; and, a prohibition on "balance billing". *Id.* §§ 413.011 (reimbursement guidelines), 413.042 ("A health care provider may not pursue a private claim against a workers' compensation claimant").

As for the reimbursement program, TWCA authorizes health-care providers to seek payment directly from workers'-compensation insurers for services provided patients covered by TWCA. *Id.* § 408.027(a). The insurer then reimburses the health-care provider according to rate guidelines promulgated by the Texas Workers' Compensation Commission (commission). *See id.* These rates are generally based on corresponding Medicare rates. An insurer is not allowed to pay more than the maximum-reimbursement rate, regardless of whether the rate satisfies the health-care provider's billed amount. *Id.* § 413.011(d).

Therefore, under this system, the initial bill goes to the insurer rather than the patient. Furthermore, the balance-billing prohibition prevents a health-care provider from billing the patient for any portion of the bill in excess of the commission's rate. *Id.* § 413.042. If a health-care provider violates this prohibition, TWCA authorizes fines up to "$25,000 per day per occurrence". *Id.* § 415.021(a).

If a health-care provider believes it was underpaid, or the commission has not yet set a specific rate, it may dispute the fee with the Texas Department of Insurance, Division of Workers' Compensation (DWC). *See id.* § 413.031(a), (c). (Air Evac does not appeal the dismissal of DWC from this action.)

DWC serves as a first-level administrative adjudicator, with the health-care provider and insurer participating as interested parties. *See id.* DWC's

decisions are appealable to the State Office of Administrative Hearings (SOAH); SOAH's decisions, to the Travis County, Texas, district court. *See id.* § 413.031(k-1); Tex. Gov. Code Ann. § 2001.176. And, an appeal may be taken from a decision by that court. Tex. Gov. Code Ann. § 2001.901.

If the commission has not promulgated a reimbursement rate for a given service, DWC must determine a "fair and reasonable" rate through administrative proceedings. *See* 28 Tex. Admin. Code § 134.1(e)–(f). In 2002, DWC adopted a rule setting a general reimbursement rate of 125% of the Medicare rate. *See id.* § 134.203(d).

After adhering to this rule for ten years, numerous air-ambulance companies—including Air Evac—challenged the 125% rate in the state-administrative-dispute system, urging ADA preemption. Initially, DWC stated it believed Texas' reimbursement guidelines were preempted. In September 2015, however, following an extensive series of administrative hearings, an administrative law judge (ALJ) ruled TWCA's scheme was not preempted, and found the proper reimbursement rate to be 149% of the Medicare rate.

The lead entity in the administrative proceeding, PHI Air Medical, LLC, appealed the ALJ's ruling to the Travis County district court. *See Tex. Mut. Ins. Co., et al. v. PHI Air Medical, LLC*, No. D-1-GN-15-004940 (Tex. 53d Jud. Dist. 15 Dec. 2016). In mid-December 2016, that court ruled: TWCA is not preempted; and, a reimbursement rate of 125% of the Medicare rate is adequate under TWCA. *Id.* On 31 January 2017, PHI appealed to the court of appeals. In the meantime, hundreds of air-ambulance fee disputes have been held at the SOAH level, pending the outcome of PHI's judicial proceeding.

Approximately a year earlier, in January 2016, with the state proceeding ongoing, Air Evac filed this action, seeking: a declaratory judgment that ADA

preempts TWCA with respect to air-ambulance companies; injunctive relief against enforcement of the maximum-reimbursement-rate system; or, in the alternative, declaratory and injunctive relief against the balance-billing prohibition. The district court granted a joint motion to intervene on behalf of numerous workers'-compensation insurers (insurers). Prior to the discovery conference, Air Evac moved for summary judgment and each defendant moved to dismiss.

The court granted defendants' Federal Rule of Civil Procedure 12(b)(1) motions to dismiss. *Air Evac EMS, Inc. v. Texas*, No. 1:16-CV-00060-SS, 2016 WL 4259552, at *9 (W.D. Tex. 11 Aug. 2016). In doing so, it first ruled subject-matter jurisdiction existed, based on *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n.14 (1983) (ruling preemption claims present a federal question because they rely on interpretation of federal statutes and the Supremacy Clause). *Air Evac EMS*, 2016 WL 4259552, at *5. The court continued to explain that, although *Shaw* confers federal-question jurisdiction under 28 U.S.C. 1331, the Supremacy Clause, ADA, and Declaratory Judgment Act do not provide a "private right of action". *Id.* at *5–6.

Therefore, in the light of the Eleventh Amendment, the court concluded: in order for this action to proceed, Air Evac must rely on a federal court's equitable jurisdiction to enjoin state officials under *Ex parte Young*. *Id.* at *6. Looking to *Ex parte Young*'s basic requirements, the court first acknowledged Air Evac: seeks prospective injunctive relief; and claims an ongoing violation of federal law. *Id.* at *6–7.

The court next considered *Okpalobi v. Foster*, 244 F.3d 405 (5th Cir. 2001) (*en banc*), in which the lead, plurality opinion would have required defendants in an *Ex parte Young* action to, *inter alia*, "be specially charged with the duty to enforce the statute", as well as to "be threatening to exercise

that duty". *Air Evac EMS*, 2016 WL 4259552, at *7 (quoting *Okpalobi*, 244 F.3d at 414–15). Relying on the duty-to-enforce requirement, the court noted TWCA's maximum-reimbursement scheme cannot be enforced against Air Evac because it constrains the amount insurers can *pay*, rather than the amount air-ambulance companies can *charge*. *Id.* at *8. Without direct enforcement against the health-care providers, the court concluded, the maximum-reimbursement system does not qualify as the basis for the *Ex parte Young* exception. *Id.*

Turning to Air Evac's alternative challenge to the balance-billing prohibition, the court recognized state defendants are charged with enforcing the provision against entities which violate the rule. *Id.* The court, however, held: "Air Evac's claims fail under *Young*, as Air Evac has failed to show an enforcement proceeding concerning the balance-billing prohibition is imminent, threatened, or even intended". *Id.* In doing so, the court specifically rejected Air Evac's assertion that it need not "expose itself" to liability by violating the balance-billing prohibition in order to test the law's constitutionality under the Supremacy Clause. *Id.*

In sum, the court held: despite claiming an ongoing violation of federal law and seeking only prospective relief, Air Evac could not avail itself of the *Ex parte Young* exception because the maximum-reimbursement system is not directly enforced against Air Evac, and state defendants have not threatened to enforce the balance-billing prohibition. *Id.* at *9.

## II.

For this appeal, our court granted expedited briefing and oral argument. The parties raise four distinct threshold issues: whether Air Evac has Article III standing; whether federal-question jurisdiction exists for this action under 28 U.S.C. § 1331; whether *Ex parte Young*'s exception applies; and whether, in

the light of the above-referenced ongoing state proceedings, we should abstain from exercising otherwise-proper jurisdiction.

A motion to dismiss' being granted is reviewed *de novo*, applying the same standard as the district court. *E.g.*, *Bennett-Nelson v. La. Bd. of Regents*, 431 F.3d 448, 450 n.2 (5th Cir. 2005). And, of course, a federal court must always determine its own jurisdiction; if it decides it is lacking, it may proceed no further. *E.g.*, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). Consistent with our above-described standard of review, "whether state defendants are entitled to sovereign immunity is likewise reviewed *de novo*". *Moore v. La. Bd. of Elementary & Secondary Educ.*, 743 F.3d 959, 962 (5th Cir. 2014) (internal citation omitted).

A.

State defendants' challenge to Air Evac's standing is adopted by insurers. Federal standing has three well-known requirements: (1) injury-in-fact; (2) "fairly traceable" causation; and (3) redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). In concluding Air Evac has standing, the court stated:

> Air Evac has suffered economic injury given its alleged inability to recover the total amount of its billed charges under the TWCA reimbursement scheme; the causal connection between the scheme and Air Evac's injury is clear; and if the challenged provisions are indeed preempted, the State Defendants will no longer be able to enforce them. Air Evac has standing to sue.

*Air Evac EMS*, 2016 WL 4259552, at *4 n.2.

State defendants assert the district court's analysis is too simplistic, that Air Evac cannot establish causation or redressability. They maintain that, to the extent not being able to recover full-billed charges is an injury, there is no traceability or redressability because TWCA's reimbursement cap is not

directly "enforced" against Air Evac, but against insurers. (As discussed *infra*, there is significant overlap between standing and *Ex parte Young*'s applicability.)

Under the above-described three-part test, an injury-in-fact—the first requirement—must be "concrete and particularized" and "actual or imminent". *Lujan*, 504 U.S. at 560. Working in tandem, TWCA's provisions effectively set a reimbursement rate and prohibit air-ambulance entities from collecting any more than that rate from other sources (*i.e.*, the patient).

Along that line, *Ex parte Young* was a rate-setting case in which a railroad was not allowed to charge more than the state-mandated rate. 209 U.S. at 127–28. There, the complaint claimed those rates were confiscatory, in violation of the Fourteenth Amendment's mandate that no State shall "deprive any person of life, liberty, or property, without due process of law". U.S. Const. amend. XIV, § 1; *see Ex parte Young*, 209 U.S. at 149–50. Although Air Evac does not contend that collecting 125% of the Medicare rate is confiscatory, capping rates based on a federally-preempted state law (by virtue of the Supremacy Clause) would limit a party's financial recovery. Thus, prohibiting collection in excess of the maximum-reimbursement rate is a pecuniary injury sufficient to establish injury-in-fact. *See, e.g.*, *K.P. v. LeBlanc*, 627 F.3d 115, 122 (5th Cir. 2010).

For the second standing requirement, there must be a "fairly traceable" causal connection "between the injury and the conduct complained of". *Lujan*, 504 U.S. at 560. Three of state defendants' duties are "fairly traceable" to Air Evac's injury: (1) rate-setting; (2) fee-dispute resolution; and (3) the balance-billing prohibition. For the reasons that follow, collectively, these three instances of commission and DWC conduct are "fairly traceable" to Air Evac's injury.

First, the commission and DWC set the reimbursement rates insurers are allowed to pay. Although defendants contend this rate-setting is too attenuated to be the cause of Air Evac's injury, "[t]racing an injury is not the same as seeking its proximate cause". *K.P.*, 627 F.3d at 123. By setting the reimbursement rates, state defendants initiate the first step in the workers'-compensation-payment process.

Second, state defendants oversee the administrative fee-dispute process. In *K.P.*, described *infra*, a state regulatory board served as the "initial arbiter[]" within a state-funded compensation system. *Id.* Our court ruled that role "place[d] the Defendants among those who would contribute to Plaintiffs' harm". *Id.* Likewise, state defendants' oversight of DWC—the "initial arbiter[]" of fee-reimbursement disputes—places state defendants among those who cause Air Evac's injury. *Id.*

Third, state defendants are charged with enforcing the balance-billing prohibition. Their ability to fine TWCA violators up to $25,000 per violation, per day, prevents Air Evac from seeking additional payment outside of the maximum-reimbursement scheme.

The final of the three standing requirements is that the court be able to structure relief to redress plaintiff's injury. Plaintiff must show a "favorable decision will relieve a discrete injury to himself", but not necessarily "that a favorable decision will relieve his *every* injury". *Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982) (emphasis in original).

In *Okpalobi*, defendant state officials (governor and attorney general) were found not to have "any duty or ability to do *anything*" relating to the statute. 244 F.3d at 427 (emphasis in original). On the other hand, in *K.P.*, defendant board members had "definite responsibilities relating to the application of [the statute]". 627 F.3d at 124.

Here, state defendants are more akin to the board members in *K.P.* than the state-wide officials in *Okpalobi*. As explained above, state defendants wield influence at multiple points in the workers'-compensation reimbursement process. An injunction against their rate setting, fee-dispute resolution, or enforcement of the balance-billing prohibition would remove a "discrete injury" caused by state defendants' enforcement of TWCA. *See Larson*, 456 U.S. at 243 n.15.

In sum, state defendants' duties concerning the workers'-compensation reimbursement system and balance-billing prohibition cause Air Evac a pecuniary injury that can be redressed with injunctive and declaratory relief. In short, Air Evac has Article III standing.

B.

Next, state defendants (but not insurers) contend federal-question jurisdiction for this action is lacking, based on *Armstrong v. Exceptional Child Care, Inc.*, 135 S. Ct. 1378, 1384 (2015). State defendants cite *Armstrong* for the proposition that, in order for federal jurisdiction to exist, plaintiff, at this threshold stage, must nevertheless establish the requirements for injunctive relief.

The district court ruled federal-question jurisdiction existed, based on the Court's plain statement in *Shaw*. *See Air Evac EMS*, 2016 WL 4259552, at *5 (citing *Shaw*, 463 U.S. at 96 n.14). The *Shaw* Court stated: "A plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve". 463 U.S. at 96 n.14. Because Air Evac's complaint seeks injunctive relief on

the basis that the ADA preempts the TWCA, *Shaw* confers federal-question jurisdiction. *See id.*

Despite state defendants' assertions to the contrary, *Armstrong* does not modify *Shaw*'s clear language. *Armstrong* holds the Supremacy Clause does not create a right to challenge state laws on preemption grounds; rather, the clause "instructs courts what to do when state and federal law clash, but is silent regarding who may enforce federal laws in court". *Armstrong*, 135 S. Ct. at 1383. Thus, the Court held: "The ability to sue to enjoin unconstitutional actions by state and federal officers is the creation of courts of equity", not the Supremacy Clause. *Id.* at 1384.

In *Armstrong*, the Court reaffirmed that plaintiffs' seeking injunctive relief against state officers must satisfy *Ex parte Young*'s equitable exception. *See id.* This holding requires Air Evac proceed under *Ex parte Young*, if at all; but, it does not contradict *Shaw*'s plain grant of federal-question jurisdiction under Article III and 28 U.S.C. § 1331. *See Shaw*, 463 U.S. at 96 n.14.

## C.

Having concluded jurisdiction existed, the district court next considered *Ex parte Young*'s applicability. *Air Evac EMS*, 2016 WL 4259552, at \*6. As noted, *Ex parte Young* represents an equitable exception to Eleventh Amendment sovereign immunity. 209 U.S. at 155–56. The doctrine allows plaintiff to sue a state official, in his official capacity, in seeking to enjoin enforcement of a state law that conflicts with federal law. *See id.* at 159–60. It is a threshold question which, therefore, does not consider the merits of an action, focusing instead on whether the complaint makes the requisite claims against proper parties. *See id.* at 150. Air Evac contends the district court misapplied *Ex parte Young*'s standard in two ways.

First, Air Evac challenges the court's concluding the maximum-reimbursement rates are not enforced against Air Evac because TWCA regulates the amount insurers may pay, rather than the amount air-ambulance entities can collect. *Air Evac EMS*, 2016 WL 4259552, at *8. Air Evac asserts the statute is directly enforced against it every time it either seeks reimbursement through TWCA or disputes a reimbursement amount through DWC's administrative process.

Second, Air Evac claims the court erred by requiring "initiated [or] threatened enforcement proceedings" in order, under *Ex parte Young*, to challenge TWCA's balance-billing prohibition. *See id.* at *7. Air Evac contends *Ex parte Young*, instead, requires only a "straightforward inquiry" for whether the complaint seeks prospective equitable relief for an ongoing violation of federal law, citing *Verizon Maryland, Inc. v. Public Service Commission of Maryland*, 535 U.S. 635, 645 (2002).

State defendants and insurers maintain the court was correct to require direct enforcement against Air Evac for the maximum-reimbursement provisions. Likewise, for the balance-billing prohibition, defendants agree with the court's concluding there is no imminent or threatened enforcement proceeding sufficient to meet the *Ex parte Young* exception. In addition to echoing the court's reasoning, defendants also contend: the dismissal should be affirmed because, *inter alia*, Air Evac does not meet the traditional requirements for equitable relief; therefore, no injunctive relief can be issued pursuant to the *Ex parte Young* exception.

*Ex parte Young* concerned whether a federal court may enjoin a state official from enforcing an unconstitutional state law. 209 U.S. at 126–27. Underlying the issue was a railroad's seeking an injunction against the Minnesota attorney general, who threatened criminal action and civil fines

against any railroad that violated the state commission's rate-setting order. *Id.* at 127–28. The railroad asserted, as discussed *supra*, that the rates amounted to a confiscatory taking, in violation of the Fourteenth Amendment; the attorney general claimed protection from suit under the Eleventh Amendment. *See id.* at 150.

Addressing the viability of a federal injunction, the Court held:

> [I]ndividuals who, as officers of the State, are clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act, violating the Federal Constitution, may be enjoined by a Federal court of equity from such action.

*Id.* at 155–56. In justifying its holding, the Court avoided the apparent conflict with sovereign immunity by creating a legal "fiction": a federal court does not violate state sovereignty when it orders a state official to do nothing more than uphold federal law under the Supremacy Clause. *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011); *see Ex parte Young*, 209 U.S. at 159–60.

Because this legal fiction infringes on state sovereignty, *Ex parte Young* and its progeny limit the exception. *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 269 (1997) (affirming that, in applying *Ex parte Young*, courts "must ensure that the doctrine of sovereign immunity remains meaningful, while also giving recognition to the need to prevent violations of federal law"); s*ee also Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 104–06 (1984) (limiting *Ex parte Young* jurisdiction only to violations of the federal Constitution and statutes); *Edelman v. Jordan*, 415 U.S. 651, 677 (1974) (limiting *Ex parte Young* plaintiffs only to prospective relief). Most relevant to

the action at hand, *Ex parte Young* requires defendants have "some connection" to the state law's enforcement and threaten to exercise that authority. *Ex parte Young*, 209 U.S. at 157.

This "some connection" requirement is designed to ensure defendant is not merely being sued "as a representative of the state, and thereby attempting to make the state a party". *Id.* For example, a state governor with a broad duty to uphold state law is not a proper defendant. *See Morris v. Livingston*, 739 F.3d 740, 745–46 (5th Cir. 2014).

Despite these restrictions, the Court has reinforced *Ex parte Young*'s being a "straightforward inquiry" and specifically rejected an approach that would go beyond a threshold analysis. *See Coeur d'Alene*, 521 U.S. at 296 (O'Connor, J., concurring in part and in judgment). In *Coeur d'Alene*, the lead opinion proposed a balancing test, weighing the significance of the federal right, the availability of a state forum, and the importance of the state interest. *Id.* at 270–80. Seven justices rejected this approach and agreed with Justice O'Connor's position that a case-by-case balancing test "unnecessarily recharacterizes and narrows" *Ex parte Young*. *Id.* at 291 (O'Connor, J., concurring in part and in judgment); *id.* at 298 (Souter, J., dissenting).

Subsequently, in *Verizon*, 535 U.S. at 645 (quoting *Coeur d'Alene*, 521 U.S. at 296 (O'Connor, J., concurring in part and in judgment)), a majority of the Court affirmed this principle, stating: "[A] court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective'". There, a state regulatory commission issued an order interpreting the scope of a private contract, which had been subject to prior commission approval. *Id.* at 639–40. Plaintiff's subsequent federal-court action claimed the commission's order conflicted with federal law. *Id.* at 640.

The Court conducted a "straightforward inquiry" into the pleadings and noted: "We have approved injunction suits against state regulatory commissioners in like contexts". *Id.* at 645 (collecting cases). Thus, the action could proceed against state commissioners for their role in implementing a state regulatory scheme. *See id.* at 645–48.

Our court has also considered *Ex parte Young*'s navigating between state sovereignty and federal supremacy: specifically, how close a relationship is required between the state actor and the claimed unconstitutional act. *Compare Okpalobi*, 244 F.3d at 413–16 (lead plurality requiring a "special relation" to "threatened enforcement"), *with K.P.*, 627 F.3d at 124 (explicitly declining to follow the *Okpalobi* plurality's "special relation" standard). For example, in our *en-banc* decision in *Okpalobi*, the Eleventh Amendment question was whether defendants—Louisiana's governor and attorney general—had a sufficient duty, under *Ex parte Young*, to enforce a Louisiana statute. *See* 244 F.3d at 410–11. The statute provided for private actions and unlimited tort liability against doctors who performed abortions. *Id.* at 409.

The lead opinion interpreted *Ex parte Young*'s "some connection" language to require a "special relation" or "close connection". *See id.* at 413–19 (citing *Ex parte Young*, 209 U.S. at 157; *Fitts v. McGhee*, 172 U.S. 516, 529 (1899)). Because the statute provided only for private enforcement by patients (as opposed to state enforcement), and because the governor and attorney general had only a "general duty" to see state laws enforced, the lead opinion held such a tenuous connection was insufficient to invoke *Ex parte Young*. *Okpalobi*, 244 F.3d at 423–24.

As noted *supra*, the Eleventh Amendment analysis in *Okpalobi*, however, received support only from a plurality of our *en banc* court; the majority decided the case on standing. *See id.* at 429 (Higginbotham, J.,

15

concurring); *id.* at 432–33 (Benavides, J., concurring in part and dissenting in part); *id.* at 441 (Parker, J., dissenting). Subsequently, in *K.P.*, 627 F.3d at 124, our court stated: "Because that part of the [*Okpalobi*] en banc opinion did not garner majority support, the Eleventh Amendment analysis is not binding precedent".

The *K.P.* court considered the same Louisiana abortion statute as had *Okpalobi*, but in a different context. *K.P.*, 627 F.3d at 119–20, 122. There, plaintiff physicians were members of Louisiana's patients'-compensation fund, which effectively capped physicians' liability in medical-malpractice actions. *Id.* at 119. An oversight board administered the fund by reviewing patient claims and determining coverage. *See id.* But, when a patient filed a claim asserting abortion-related tort damages, the board relied on the Louisiana abortion statute to exclude the physicians from the fund's coverage and liability cap. *Id.* at 120; *see* La. Rev. Stat. Ann. § 9:2800.12(A), (B)(2), (C)(2) (excluding abortion procedures from the "laws governing medical malpractice or limitations of liability thereof"). Plaintiff physicians' subsequent federal-court action sought to enjoin the board's denying them coverage based on the claimed unconstitutional abortion statute. *K.P.*, 627 F.3d at 120.

In its Eleventh Amendment analysis, the *K.P.* court defined "enforcement" as involving "compulsion or constraint". *Id.* at 124. It then held, without adopting the "special relation" standard from *Okpalobi*, that "the Board's role starts with deciding whether to have a medical review panel consider abortion claims and ends with deciding whether to pay them. By virtue of these responsibilities, Board members are delegated some enforcement authority". *Id.* at 125. Unlike the governor and attorney general in *Okpalobi*, the board in *K.P.* took specific action predicated on the abortion

statute; this was a sufficient connection to enforcement to trigger the *Ex parte Young* exception. *See id.*

As these cases demonstrate, the *Ex parte Young* analysis can turn on subtle distinctions in the complaint. *Ex parte Young* and *Okpalobi* each involved a state attorney general as defendant. In *Ex parte Young*, the attorney general had authority to enforce the statute at issue, while the Louisiana abortion statute in *Okpalobi* provided for enforcement through private actions, not public officials.

On the other hand, in *Okpalobi* and *K.P.*, the same statute was at issue, but defendants in the respective actions provided the determinative distinction. Rather than suing the attorney general and governor, as in *Okpalobi*, the *K.P.* plaintiffs sued the state-regulatory-board members, who had a specific means through which to apply the abortion statute. Thus, the *Ex parte Young* analysis turns on the complaint's context—including the challenged state law and defendants—to determine whether "the state officer, by virtue of his office, has some connection with the enforcement of the act". *Ex parte Young*, 209 U.S. at 157.

### 1.

Turning to the matter at hand, we must decide whether state defendants have the requisite connection to the enforcement of the maximum-reimbursement system and balance-billing prohibition. In doing so, we bear in mind the Court's admonition that *Ex parte Young* presents a "straightforward inquiry" into the complaint's claims. *See Verizon*, 535 U.S. at 645.

First, as the district court noted, Air Evac claims an ongoing violation of federal law and seeks prospective relief. *See Air Evac EMS*, 2016 WL 4259552, at *7. The complaint claims the ADA expressly preempts the workers'-

compensation system with respect to air-ambulance entities and seeks an injunction and declaratory judgment.

Next, we hold state defendants have a sufficient connection to the enforcement of the TWCA through the maximum-reimbursement rates and balance-billing prohibition. The district court was correct to recognize that "enforcement" under the maximum-reimbursement scheme is not the same type of direct enforcement found in *Ex parte Young*, for instance, where the attorney general threatened civil and criminal prosecution. But, such enforcement is not required. *See, e.g., Verizon*, 535 U.S. at 645–46; *K.P.*, 627 F.3d at 124–25. In *Verizon*, the Court allowed an action against commissioners who ordered specific payments between private parties. 535 U.S. at 645–46. Likewise, in *K.P.*, the board members' reliance on the abortion statute to deny liability protection qualified as enforcement. 627 F.3d at 125.

Employing *K.P.*'s definition of "enforcement" as "compulsion or constraint", state defendants obviously *constrain* Air Evac's ability to collect more than the maximum-reimbursement rate under the TWCA system. Between their rate-setting authority and role in arbitrating fee disputes through the administrative process, state defendants effectively ensure the maximum-reimbursement scheme is enforced from start to finish. Therefore, the district court erred in not considering, for the purpose of *Ex parte Young*'s being applied, the maximum-reimbursement provision as a means of enforcing TWCA against Air Evac.

The parties debate whether *Ex parte Young* applies only when there is a threatened or actual proceeding to enforce the challenged state law. We need not resolve that question. To the extent *Ex parte Young* requires that the state actor "threaten" or "commence" proceedings to enforce the unconstitutional act, state defendants' pervasive enforcement satisfies that test. *See* 209 U.S. at

18

156. In *K.P.*, our court held the prior denial of liability coverage fulfilled the threatened-proceedings requirement; so, too, does state defendants' enforcement of the 125% air-ambulance-reimbursement rate. *See K.P.*, 627 F.3d at 125.

2.

Having held the *Ex parte Young* exception applies, we need not engage in a separate analysis of the balance-billing prohibition. As discussed, the district court concluded "Air Evac has failed to show an enforcement proceeding concerning the balance-billing prohibition is imminent, threatened, or even intended". *Air Evac EMS*, 2016 WL 4259552, at *8. We note, however, that the balance-billing prohibition works in concert with state defendants' implementation of the reimbursement system, serving as a backstop against alternative methods of fee collection. State defendants' pervasive authority to oversee and enforce Texas' workers'-compensation system satisfies the *Ex parte Young* exception.

3.

Finally, courts recognize the significant overlap between Article III jurisdiction, *Ex parte Young*, and equitable relief. *See, e.g.*, *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 394 n.5 (5th Cir. 2015) (equating and distinguishing *Ex parte Young*'s requirements with the "Article III minimum for standing to request an injunction"). As with most jurisdictional questions, *Ex parte Young* and standing turn on the specific details in the complaint.

These doctrines are both threshold questions, however, and do not consider the action's merits. In fact, the *Ex parte Young* Court acknowledged the underlying action would rely on the Fourteenth Amendment, but noted "a decision of this case does not require an examination or decision of the question whether [the Fourteenth Amendment's] adoption in any way altered or limited

the effect of the [Eleventh] Amendment". 209 U.S. at 150. In doing so, the Court recognized that its Eleventh Amendment analysis was distinct from any subsequent question on the merits. *See id.*; *see also Verizon*, 535 U.S. at 646 ("But the inquiry into whether suit lies under *Ex parte Young* does not include an analysis of the merits of the claim.").

Therefore, having determined Air Evac's action satisfies the *Ex parte Young* exception, we need not consider—contrary to defendants' assertion— whether the requirements for temporary or permanent equitable relief are also satisfied. Doing so is beyond the threshold jurisdictional question posed by *Ex parte Young* and would consider the availability and scope of any eventual relief.

## D.

State defendants' final contention (adopted by insurers) is that, assuming jurisdiction exists for this action, *Colorado River* abstention should be invoked in the light of PHI's proceedings in Texas state court and the administrative system. *See Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). Because the district court based dismissal on the Eleventh Amendment, it "decline[d] to consider the propriety of *Colorado River* abstention". *Air Evac EMS*, 2016 WL 4259552, at *9. Discretionary *Colorado River* abstention may be applied when: a state proceeding is ongoing and is parallel to the federal proceeding; and, extraordinary circumstances caution against exercising concurrent federal jurisdiction. *See Colorado River*, 424 U.S. at 817–19.

"Parallel actions" typically involve the same parties, but the identity of the parties is not determinative. *See Afr. Methodist Episcopal Church v. Lucien*, 756 F.3d 788, 797 (5th Cir. 2014). Instead, a court may "look both to the named parties and to the substance of the claims asserted" to determine

whether the state proceeding would be dispositive of a concurrent federal proceeding. *Id.* If the matters are deemed parallel, the court must engage in a six-factor balancing test, but "with the balance heavily weighted in favor of the exercise of [federal] jurisdiction". *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983); *see Kelly Inv., Inc. v. Cont'l Common Corp.*, 315 F.3d 494, 497 (5th Cir. 2002) (listing the *Colorado River* factors).

For the requisite parallel action, state defendants point to the above-described PHI litigation, which arose out of DWC's administrative appeals process. As discussed, Air Evac and numerous other air-ambulance entities, in 2012, began challenging reimbursement rates through DWC's fee-dispute process. The appeals were consolidated; and, after extensive administrative proceedings, an ALJ ruled against ADA preemption. PHI sought judicial review in the Travis County district court; the other air-ambulance matters were held in abeyance pending resolution of that appeal. Shortly after oral argument in our court for the instant appeal, the state court ruled against preemption and found a 125% reimbursement rate adequate. *See Tex. Mut. Ins. Co., et al. v. PHI Air Medical, LLC*, Cause No. D-1-GN-15-00490 (Tex. 53d Jud. Dist. 15 Dec. 2016). PHI has appealed to Texas' court of appeals.

Nonetheless, given the differences between the two actions and lack of preclusive effect, we do not consider the PHI state-court proceeding to be "parallel" for the purpose of *Colorado River* abstention. For example, the parties are different on both sides: neither Air Evac nor state defendants are party to the PHI litigation. In addition, the state proceeding required the adjudicator to determine an adequate reimbursement rate, an issue not before our court. *See id.* at 2. And, most especially, the exceptional nature of federal abstention cuts in favor of jurisdiction. Accordingly, we decline to abstain.

21

### III.

For the foregoing reasons, the judgment is VACATED, and this matter is REMANDED for further proceedings consistent with this opinion.