# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 4, 2024

Lyle W. Cayce
Clerk

_____

No. 23-40526

_____

Keresa Richardson,

*Plaintiff—Appellant*,

*versus*

State of Texas; Greg Abbott, *Governor of Texas, in his official capacity*; Senator Jane Nelson, *Secretary of State*,

*Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:22-CV-1041

_____

Before Willett, Wilson, and Ramirez, *Circuit Judges*.

Per Curiam:[*]

Petitioner Keresa Richardson filed this action against the State of Texas, Governor Greg Abbott, and Secretary of State Jane Nelson, in their official capacities, alleging they violated § 2 of the Voting Rights Act and various federal and state constitutional provisions by failing to reapportion Texas's appellate court districts. The district court dismissed Richardson's

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

claims, finding that she lacked standing to bring the § 2 claims and that Eleventh Amendment sovereign immunity barred the constitutional claims. On appeal, Richardson forfeits any argument that she has standing to assert her § 2 claims. And sovereign immunity indeed forecloses her constitutional claims. We therefore affirm.

## I.

Texas currently has fourteen judicial districts with a court of appeals serving each district.[1] TEX. GOV'T CODE § 22.201. The courts' sizes differ by judicial district, and some judicial districts have overlapping jurisdiction over certain counties. For instance, the Fifth and Sixth Courts of Appeals have overlapping jurisdiction over appeals arising from Hunt County, and the First and Fourteenth Courts of Appeals serve identical counties in their concurrent geographic districts. Richardson avers she "is a member of a distinct ethnic minority group within the current Fifth District Court of Appeals (white women voters)."

Three separate entities may reapportion the judicial districts: the Texas legislature, the Judicial Districts Board, or the Legislative Redistricting Board. *See* TEX. CONST. art. V, § 7a(e). The legislature gets the first crack at reapportioning the judicial districts after a decennial census. *See id.* But if it declines to do so, the Judicial Districts Board must convene, "complete its work on the reapportionment and file its order with the secretary of state . . . ." *Id.* The Judicial Districts Board consists of the Chief Justice of the Supreme Court of Texas, the Presiding Judge of the Texas

---

[1] The Texas legislature amended Texas Government Code § 22.201 in 2023 to create the Fifteenth Judicial District, covering the entire state, and the Fifteenth Court of Appeals, which has jurisdiction over cases brought against the state and various state agencies and officials. The new judicial district and court become effective September 1, 2024.

No. 23-40526

Court of Criminal Appeals, the presiding judge of each of the eleven administrative judicial districts of the state, the president of the Texas Judicial Council, and one lawyer licensed to practice in the state appointed by the governor and confirmed by the Texas Senate.[2] *Id.* § 7a(b). The Judicial Districts Board's authority does not "limit the power of the legislature to reapportion the judicial districts of the state," *id.* § 7a(g), and any reapportionment adopted by the Judicial Districts Board must be approved by the legislature, *id.* § 7a(h); *see also* TEX. GOV'T CODE §§ 24.942–24.947.

If neither the legislature nor the Judicial Districts Board reapportions judicial districts by August 31 of the year following a decennial census, the Legislative Redistricting Board must do so. TEX. CONST. art. V, § 7a(e). This board consists of Texas's Lieutenant Governor, Speaker of the House of Representatives, Attorney General, Comptroller of Public Accounts, and Commissioner of the General Land Office. *Id.* art. III, § 28.

Governor Abbott called a special session of the Texas legislature to address redistricting in 2021. The legislature redrew maps for Texas's House, Senate, Congressional, and Board of Education districts but did not do so for judicial districts. After the legislature's "inaction," Richardson filed this lawsuit and a concurrent state court suit in December 2022. She brings claims under (1) the Due Process and Equal Protection Clauses of the

---

[2] The eleven administrative districts are distinct from the appellate judicial districts that are the subject of Richardson's lawsuit. *See Administrative Judicial Regions*, TEX. JUD. BRANCH, https://www.txcourts.gov/organizations/policy-funding/administrative-judicial-regions/ (outlining Texas's Administrative Judicial Regions and the requirement that the presiding judge have served as a state district judge). The Texas Judicial Council "is the policy-making body for the state judiciary" rather than a court. *See Texas Judicial Council*, TEX. JUD. BRANCH, https://www.txcourts.gov/tjc/.

Fifth and Fourteenth Amendments;[3] (2) 42 U.S.C. § 1983; (3) article I, § 3 of the Texas Constitution; and (4) § 2 of the Voting Rights Act (VRA), 52 U.S.C. § 10101. She seeks injunctive and declaratory relief against Texas to require the state "to reapportion and realign its appellate judicial districts" in a lawful manner. The gravamen of her operative complaint in this case is that the current population apportionment of Texas's appellate judicial districts violates the "federal constitutional assurance of equal protection" and that under the United States and Texas Constitutions "votes cannot lawfully be disproportionate across districts in violation of the one-person, one-vote doctrine."

Defendants moved to dismiss Richardson's claims or, alternatively, to stay this case pending resolution of the concurrent state action. The district court granted Defendants' motion to dismiss. The court first held it lacked subject matter jurisdiction over the constitutional claims due to Texas's sovereign immunity under the Eleventh Amendment and concluded that, as to the federal claims, the exception articulated in *Ex parte Young*, 209 U.S. 123 (1908), did not apply. As for her VRA § 2 claims, the district court determined that Richardson lacked standing because she failed to "allege that her injury is premised on race-based dilution of her vote."

Richardson now appeals. She asserts that the district court had subject matter jurisdiction, *Ex parte Young* applies to deprive Governor Abbott and Secretary Nelson of sovereign immunity, and, at a minimum, the case should be remanded for findings as to her equal protection claims.

_____

[3] Richardson does not specifically cite the Fifth and Fourteenth Amendments to the United States Constitution; instead, she states sporadically in her complaint that Defendants violated her due process and equal protection rights under the Constitution. She does likewise in her appellate briefing.

No. 23-40526

## II.

We review the district court's dismissal for lack of standing *de novo*. *Barilla v. City of Houston*, 13 F.4th 427, 431–32 (5th Cir. 2021) (citing *Cornerstone Christian Schs. v. Univ. Interscholastic League*, 563 F.3d 127, 133 (5th Cir. 2009)). We also review the district court's jurisdictional determination of sovereign immunity *de novo*. *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019) (citing *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 393 (5th Cir. 2015); *Moore v. La. Bd. of Elementary & Secondary Educ.*, 743 F.3d 959, 962 (5th Cir. 2014)).

## A.

Richardson's VRA § 2 claims are readily dispatched because she has forfeited any argument that she has standing to pursue them. "A party forfeits an argument by . . . failing to adequately brief the argument on appeal." *Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021). "[A]rguments *in favor* of standing, like all arguments in favor of jurisdiction, can be forfeited . . . ." *E.T. v. Paxton*, 41 F.4th 709, 718 n.2 (5th Cir. 2022) (emphasis in original) (citing *Ctr. for Biological Diversity v. EPA*, 937 F.3d 533, 542 (5th Cir. 2019)). And because "standing is not dispensed in gross," "a plaintiff must demonstrate standing for each claim [s]he seeks to press and for each form of relief that is sought." *Town of Chester v. Laroe Ests. Inc.*, 581 U.S. 433, 439 (2017) (citations and quotations omitted).

Instead of addressing the district court's ruling that she lacked standing to bring her § 2 claims, Richardson's briefing focuses on her standing to pursue the "primary issue in this case[, which] is whether the equal protection clauses of the Texas or Federal Constitutions apply to Texas'[s] elections of its appellate court justices . . . ." Defendants respond that "because she never mentions any claim based on . . . the VRA," "the district court's dismissal of those claims is deemed unopposed." Defendants

5

point out that Richardson's motion for expedited review averred that the "[s]ingle [l]egal [i]ssue" on appeal was whether "the current 14 election districts for the Texas Courts of Appeals are configured in such a way that Texas voters are denied their Constitutional rights to equal protection and due process." In reply, Richardson somewhat puzzlingly contends that the "[VRA] is [i]napplicable at this [j]uncture" and chides Defendants for "trail[ing] off into the [VRA] part of the case even though that issue has nothing to do with the issues of jurisdiction now being decided."

But the "issues of jurisdiction" now before us very much include whether Richardson could properly assert her VRA § 2 claims. Defendants are thus correct that Richardson has forfeited any argument that she has standing to bring them. She states several times that the VRA is not at issue on appeal, and otherwise fails to "demonstrate standing" for those claims. *Town of Chester*, 581 U.S. at 439. Because Richardson has not meaningfully challenged the district court's holding on this issue, we decline to address it further.[4] *See United States v. Guillen-Cruz*, 853 F.3d 768, 777 (5th Cir. 2017) (citing *Hernandez v. Garcia Pena*, 820 F.3d 782, 786 n.3 (5th Cir. 2016)).

## B.

The district court concluded that sovereign immunity bars Richardson's claims brought under the Due Process[5] and Equal Protection

---

[4] Richardson has also arguably waived her standing arguments by asserting that the only issue on appeal relates to her equal protection claims. *See Cargill v. Garland*, 57 F.4th 447, 465 (5th Cir. 2023) (noting waiver "is the intentional relinquishment or abandonment of a known right" (internal quotations omitted) (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993))). We need not delve into the distinctions between waiver and forfeiture, however, because either way, any standing arguments as to her § 2 claims are foreclosed.

[5] Defendants contend that Richardson waived her due process claims for lack of briefing. True enough, Richardson fails to cite the Fifth or Fourteenth Amendments to the United States Constitution. But unlike her VRA § 2 claims, Richardson at least engages on the merits of her due process claims. *See, e.g.*, *Richardson v. Texas*, 23-40526, Emergency

No. 23-40526

Clauses of the Fifth and Fourteenth Amendments; 42 U.S.C. § 1983; and article 1, § 3 of the Texas Constitution.[6] We agree.

"Eleventh Amendment sovereign immunity bars private suits against nonconsenting states in federal court" in most cases. *City of Austin*, 943 F.3d at 997 (collecting cases). As an extension, sovereign immunity precludes suits against state officials or agencies that are effectively suits against the state. *Id.* Generally, unless Congress abrogates a state's sovereign immunity or the state waives it, the Eleventh Amendment bars the suit. *See AT&T Commc'ns v. Bellsouth Telecomms. Inc.*, 238 F.3d 636, 643 (5th Cir. 2001).

But there is an exception. The Supreme Court in *Ex parte Young* crafted a "legal fiction that allows private parties to bring 'suits for injunctive or declaratory relief against individual state officials acting in violation of federal law.'" *City of Austin*, 943 F.3d at 997 (quoting *Raj v. La. State Univ.*, 714 F.3d 322, 328 (5th Cir. 2013) (citing *Ex parte Young*, 209 U.S. at 155–56)). In determining whether *Ex parte Young* applies, we do not evaluate the merits of the underlying claim. *Id.* at 998. Instead, we first look to whether the plaintiff names a defendant "statutorily tasked with enforcing the challenged law . . . ." *Id.* If "no state official or agency is named in the statute[s] in question, we consider whether [the defendant has] the authority to enforce the challenged law." *Id.* Specifically, we determine whether the defendant

_____

Mot. For Expedited Rev. 4 (5th Cir.) (filed Sept. 15, 2023). She thus has preserved them for our review.

[6] Richardson ostensibly asserts her due process and equal protection claims under the Fifth and Fourteenth Amendments to the United States Constitution as standalone claims separate from her § 1983 claims against Defendants. However, as Richardson seems to concede, § 1983 is the proper vehicle by which to bring those claims. *See Raj v. La. State Univ.*, 714 F.3d 322, 328 n.2 (5th Cir. 2013). Thus, we conduct the same sovereign immunity analysis for each Defendant as if her § 1983 claims encompass the due process and equal protection claims. *Id.*

has a "'sufficient connection [to] the enforcement' of the challenged act." *Id.* (alteration in original) (first quoting *Ex parte Young*, 209 U.S. at 157, and then citing *Air Evac EMS, Inc. v. Tex. Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 519 (5th Cir. 2017)).

Here, sovereign immunity clearly bars suit against each Defendant, and *Ex parte Young* does not change the calculus. We discuss each party in turn.

### 1. *Texas*

Congress has not abrogated states' sovereign immunity from suit for § 1983 claims, *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984), and Richardson does not address why or how Texas's sovereign immunity does not bar her § 1983 claim against it. Indeed, she concedes that "Supreme Court precedent directs citizens to sue the state by suing its governor or secretary of state in their 'official capacities.'" To the extent she asserts federal constitutional claims against Texas itself, those claims are barred by the Eleventh Amendment. The same applies to Richardson's state constitutional claim because federal courts are precluded "from hearing state law claims brought in federal court against state entities." *Raj*, 714 F.3d at 329 (citing *Pennhurst*, 465 U.S. at 117).

Richardson offers *Steele v. City of Houston*, 603 S.W.2d 786 (Tex. 1980), for the proposition that the Texas Constitution waives sovereign immunity if Texas law violates its bill of rights, Tex. Const. art. I, §§ 1–36. However, this is an untenable reading of *Steele*, as its holding extends only to article I, § 17 of the Texas Constitution, concerning governmental takings. 603 S.W.2d at 791 ("The [Texas] Constitution itself is the authorization for compensation for the destruction of property and *is a waiver of governmental immunity for the taking, damaging or destruction of property for public use.*") (emphasis added). True, Texas courts have held that "[w]hen

a [Texas] law conflicts with rights guaranteed by Article I [of the Texas Constitution] . . . suits for equitable remedies for violation of constitutional rights are not prohibited." *City of Beaumont v. Bouillion*, 896 S.W.2d 143, 149 (Tex. 1995). But even if Texas has more broadly waived its sovereign immunity in state court, it may do so "without waiving its Eleventh Amendment immunity under federal law." *In re Allied-Signal, Inc.*, 919 F.2d 277, 280 n.4 (5th Cir. 1990) (citing *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 303–04 (1990)). Richardson proffers no authority suggesting that Texas's sovereign immunity for state constitutional claims has been abrogated or waived as to suits in federal court, and we find none. Thus, the Eleventh Amendment precludes her claims against the state.

### 2. Governor Abbott and Secretary Nelson

Richardson's federal and state constitutional claims against Governor Abbott and Secretary Nelson are also barred by sovereign immunity. Regarding the federal claims, *Ex parte Young* does not apply because neither Governor Abbott nor Secretary Nelson is "statutorily tasked with enforcing the challenged law." *City of Austin*, 943 F.3d at 998. As described above, Texas first tasks the legislature, then the Judicial Districts Board, and then the Legislative Redistricting Board with reapportioning the state's judicial districts. Tex. Gov't Code §§ 24.946-24.947; *see generally* Tex. Const. art. V, § 7a. Governor Abbott and Secretary Nelson play no role in the redistricting procedure delegated to these entities. Tex. Gov't Code §§ 24.946-24.947; *see generally* Tex. Const. art. V, § 7a. They thus lack a "sufficient connection to the enforcement of the challenged act" to allow Richardson's claims against them to proceed. *City of Austin*, 943 F.3d at 998 (internal quotations omitted).

Richardson makes no effort to connect Governor Abbott to the redistricting framework applicable to the state's judicial districts. As for

Secretary Nelson, Richardson argues that she is "tasked with enforcing the (unconstitutional) districting and voting protocol found in the Texas Election Code." But this court has already determined that "[m]ore is needed" for *Ex parte Young* to apply. *Tex. All. for Retired Ams. v. Scott*, 28 F.4th 669, 674 (5th Cir. 2022). The Secretary's "expansive duties in enforcing election laws" and "general duties under the Texas Election Code" are insufficient to establish the required "connection to the enforcement of the particular statutory provision that is the subject of the litigation." *Id.* (internal citations and quotations omitted).

Richardson's state constitutional claims against Governor Abbott and Secretary Nelson are barred for the same reasons they fail against the State of Texas. "[A] claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment." *Pennhurst*, 465 U.S. at 121. And any waiver of immunity for state claims in Texas courts "does not mean the state has waived Eleventh Amendment immunity in federal court." *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 332 (5th Cir. 2002) (citing *Martinez v. Tex. Dep't of Crim. Just.*, 300 F.3d 567, 575–76 (5th Cir. 2002)). Thus, sovereign immunity bars Richardson's state claims against the individual Defendants.

## III.

Richardson has forfeited any argument that she has standing to bring her VRA § 2 claims. Texas's Eleventh Amendment sovereign immunity has not been abrogated or waived to permit Richardson's state or federal constitutional claims, or her § 1983 claims, against the Defendants. Nor does *Ex parte Young* apply to deprive Governor Abbott or Secretary Nelson of immunity, because neither is statutorily tasked with enforcing the challenged laws. Because her claims fail as a matter of law, Richardson's pending

No. 23-40526

motions to enter an interim redistricting order and to alter the existing primary election schedule are DENIED.

The judgment of the district court is

AFFIRMED.